IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-21077
_____


COOPER CAMERON CORPORATION,

Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF LABOR,
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

January 21, 2002

Before GARWOOD and WIENER, Circuit Judges, and CLEMENT,[*] District

Judge.

WIENER, Circuit Judge:

Plaintiff-Appellant Cooper Cameron Corporation ("Cooper")

appeals from the district court's grant of summary judgment

sustaining the decision of the Department of Labor ("DOL") to

withhold from public disclosure, under the Freedom of Information

Act ("FOIA"),[1] documents related to an explosion and fire at a

petrochemical plant near Houston.  Given the unusual circumstances

[*]Chief Judge Clement participated by designation in the oral
argument of this case as a United States District Judge of the
Eastern District of Louisiana.  Since that time she has been
appointed as a Fifth Circuit Judge.

[1]5 U.S.C. § 552.

of this case, we have determined that most of the material that the DOL wants to withhold does not qualify as exempt from disclosure. We therefore affirm in part, reverse in part, and render.

## I. FACTS AND PROCEEDINGS

On a Sunday in June of 1996, at the Lyondell Petrochemical Company's storage terminal in Mont Belvieu, Texas, ethylene and propylene being pumped under high pressure escaped into the atmosphere, roaring out of a pipeline in a forty-foot jet of gas, then forming a low, white cloud which drifted across a public highway, ignited, and exploded. The explosion touched off a fire which, according to the Houston Chronicle, lasted ninety minutes and was visible from an interstate highway three miles away. No one was injured, but media coverage of the incident attracted the attention of the Houston South Area Office of the Occupational Safety and Health Administration ("OSHA"), which investigated.

The explosion also sparked litigation: Lyondell sued Cooper, a valve manufacturer, for damages in state court. The parties deposed the only three Lyondell employees who were at the plant when the explosions took place: Jack Bass, Dennis Hutter, and Bobby Squier ("the deponents"). Each stated his full name and home address during his deposition, and Bass provided his Social Security number as well. The deponents testified that they gave statements about the explosion to an OSHA investigator, but that they did not have copies of their statements. Counsel for Lyondell represented the deponents, met with them to prepare their

2

testimony, and asserted the attorney-client privilege on their behalf.

Early in February, 1999, Cooper asked OSHA's investigating office to release all of its records on the explosion pursuant to the FOIA. Four days after receiving the request, OSHA furnished Cooper with three partially-redacted pages of records — standard inspection forms — but withheld 145 pages, citing FOIA's exemption 7 as justification.[2]

The following month, Cooper appealed this withholding to the Solicitor of the DOL, arguing that the tort case pending in state court publicized the identity and testimony of witnesses to the explosion, thereby negating privacy interests and revealing any otherwise confidential identities. Cooper filed three supplemental appeals letters which focused on the deponents' statements to OSHA, and bird-dogged the Solicitor's office by phone. OSHA claims that during these phone calls Cooper narrowed its FOIA request to include only the three deponents' statements. Consequently, when the Solicitor's office affirmed OSHA's action in November 1999, it stated that it understood the request to be confined to those three statements and upheld OSHA's withholding of them as proper under FOIA exemptions 7(D) and 7(C), which — to generalize — permit agencies to withhold private or confidential material.

Cooper sued the DOL in federal district court, seeking an

---

[2]There are six exemptions within 5 U.S.C. § 552(b)(7).

order compelling OSHA to produce the entire file (with names and addresses redacted), moving for summary judgment, and repeating its arguments that the deponents' privacy and confidentiality interests were attenuated. The DOL cross-moved for summary judgment, relying solely on an affidavit (the "Miller declaration") by Miriam Miller, who since 1987 has served the DOL as Co-Counsel for Administrative Law, Division of Legislation and Legal Counsel, in the Office of the Solicitor in Washington. Her declaration primarily attested not to how OSHA investigated the Mont Belvieu explosion, but rather to how OSHA depends on its ability to promise witnesses to industrial accidents that it will treat their statements confidentially. The declaration did not describe the requested material, none of which was in the district court record. The court thus lacked even an in camera affidavit describing what OSHA withheld. The court nevertheless granted the government's motion and denied Cooper's, holding that both exemptions 7(C) and 7(D) applied and that OSHA need not have segregated exempt material from disclosable material in the witness statements.[3]

Cooper timely appealed. It contests the district court's (1) narrow construction of the request, (2) application of exemptions 7(C) and 7(D), and (3) refusal to segregate out disclosable material or conduct an in camera review.

Given the gaps in the record, we attempted to clarify at oral

---

[3]Cooper Cameron Corp. v. United States Dep't of Labor, 118 F. Supp. 2d 757, 763-64 (S.D. Tex. 2000).

4

argument what kinds of documents OSHA had withheld and which of those documents Cooper had already obtained through discovery in the tort case. Counsel for the DOL, to his credit, conceded that the withheld material included some newspaper articles. The ensuing exchange spurred the parties to advocate further filings. Cooper sought to supplement the record with all the material in OSHA's file, urging that we examine this material in camera. The DOL expressed opposition but voluntarily released to Cooper everything in the OSHA file on the explosion except for eighteen pages that the DOL believes truly merit withholding and seventeen other pages that are subject to a protective order in the tort case. We denied Cooper's effort to supplement the record but agreed to conduct an in camera review of the eighteen pages, a review that our precedents permit[4] and that we have now concluded.

## II. ANALYSIS

We begin our analysis by noting several aspects of the FOIA and the litigation it has engendered.

### A. Standard of Review

We generally review a grant of summary judgment de novo, applying the same standard as the district court.[5] In most litigation, a motion for summary judgment is properly granted only

---

[4] See McCorstin v. United States Dep't of Labor, 630 F.2d 242, 243 (5th Cir. 1980); Pope v. United States, 599 F.2d 1383, 1386 (5th Cir. 1979).

[5] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

if there is no genuine issue as to any material fact.[6]

The FOIA context is unusual, however, because the threshold question in any FOIA suit is whether the requester can even <u>see</u> the documents the character of which determines whether they can be released. The requester would thus face an evidentiary Catch-22 if the statute and the case law did not make allowances. The statute "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo,'"[7] giving no deference to the agency's determinations. Courts generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions.[8] The agency often makes this explanation in an affidavit, but the affidavit "will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."[9] The D.C. Circuit, the federal appellate court with the most experience in this field, has held that because the burden to establish an exemption remains with the agency, the district court should not

---

[6] FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[7] <u>United States Dep't of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 755 (quoting 5 U.S.C. § 552(a)(4)(B)).

[8] <u>See</u> <u>Summers v. Dep't of Justice</u>, 140 F.3d 1077 (D.C. Cir. 1998).

[9] <u>Hayden v. National Security Agency/Central Security Service</u>, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

grant summary judgment based on a "conclusory and generalized" assertion, even if the FOIA requester has not controverted that assertion.[10]   We view this rule as an appropriate way of implementing the FOIA's burden-of-proof allocation on summary judgment.


B.   Categorical or Fact-Specific

Summary judgment resolves most FOIA cases, but there are two varieties of such judgment for FOIA purposes.  Disposition of the instant appeal turns on this distinction.

As the Supreme Court has advised, "for an appropriate class of law enforcement records or information[,] a categorical balance may be undertaken" in determining whether the records should be exempt from disclosure; and in ruling categorically, the district court need not examine each document in particular.[11]  This categorical approach eases judicial review of FOIA cases, permitting swifter administration and disposition of requests for records that fall

---

[10]Niagara Mohawk Power Corp. v. United States Dep't of Energy, 169 F.3d 16, 18 (D.C. Cir. 1999).

[11]Reporters Committee, 489 U.S. at 777:
The [1986] amendment was originally proposed by the Senate[,] which intended to replace a focus on the effect of a particular disclosure 'with a standard of reasonableness . . . based on an objective test.'  S.Rep. No. 98-221, 24 (1983). This reasonableness standard, focusing on whether disclosure of a particular type of document would tend to cause an unwarranted invasion of privacy, amply supports a categorical approach to the balance of private and public interests in Exemption 7(C).

into categories. Cases outside the "appropriate class," however, do not receive categorical treatment, depend on the specific content of the records sought, and require closer examination of the evidence. It is this residuum of cases that we refer to as "fact-specific."

Whether the district court ruled categorically or fact-specifically here is not readily apparent. Its opinion is probably best viewed as a categorical holding, because the court had little detail on the requested material available to it: The 145 withheld pages were not in the record, were not described in the Miller declaration, and were not summarized in a <u>Vaughn</u> index or an equivalently detailed affidavit.[12] Furthermore, as the district court noted, "the essential facts of this case are not in dispute,"[13] giving additional support for the conclusion that the district court ruled categorically.[14]

---

[12]A <u>Vaughn</u> index is a common FOIA procedural device that lists the documents responsive to the request and explains why portions have been withheld. <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

[13]<u>Cooper</u>, 118 F. Supp. 2d at 759.

[14]<u>See</u> <u>Avondale Indus., Inc. v. NLRB</u>, 90 F.3d 955, 958 (5th Cir. 1996) ("In the instant case, the parties do not dispute the relevant facts. What the parties do dispute is whether particular documents categorically fit within one of FOIA's prescribed exemptions. . . . [T]his is a question of law to which the district court is not entitled deference."); <u>Voinche v. Federal Bureau of Investigation</u>, 999 F.2d 962 (5th Cir. 1993) (holding in Freedom of Information Act suit that "[s]ummary judgment is reviewed <u>de novo</u>, under the same standards the district court applies to determine whether summary judgment is appropriate"); <u>Halloran v. Veterans Admin.</u>, 874 F.2d 315, 320 (5th Cir. 1989) ("Because the district

We do not view the district court's lack of information on the requested material as necessarily dooming a fact-specific ruling. But such a holding requires a strong awareness that general procedural principles and the evidentiary realities of FOIA litigation interact to allocate the burden of persuasion unusually.

C.   FOIA's Purpose

That allocation attempts to effectuate FOIA's "general philosophy of full agency disclosure"[15] and its purpose of facilitating public access to agency documents.[16]  FOIA's drafters intended it to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[17]  Therefore, in judging agencies' attempts to withhold information, courts use a "strong presumption in favor of disclosure."[18]

The statute, however, does not carry this philosophy to the point of impracticality.  Congress recognized that disclosure of some types of information would be unwise, and therefore wrote in

---

court based its decision not upon the unique facts of this case, but upon categorical rules regarding what does and does not constitute an invasion of privacy for FOIA purposes, we treat its conclusions as conclusions of law, and thus review them de novo.").

[15]Dep't of the Air Force v. Rose, 425 U.S. 352, 360 (1976) (quoting S. REP. No. 813, 89th Cong., 1st Sess., 3 (1965)).

[16]John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989).

[17]Rose, 425 U.S. at 361.

[18]United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991).  See also Reporters Committee, 489 U.S. at 762; Halloran, 874 F.2d at 318–19.

9

statutory exemptions that enable agencies to overcome the general presumption. Two such exemptions are at issue here.

D.   Applicable Exemptions

1. Exemption 7(C):  Unwarranted Invasion of Personal Privacy

FOIA's exemption 7(C) provides that an agency's duty to disclose records shall not apply to

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.[19]

To determine whether this exemption applies, we must first determine whether the records were compiled for law-enforcement purposes; if they were, then we must weigh the public's interest in disclosure against the individual's right to privacy.[20]

a.   Law-Enforcement Purpose

Although Cooper contends that OSHA's records were not "compiled for law enforcement purposes,"[21] this contention is feeble at best.  Congress obviously intended OSHA inspections to be part of an enforcement program,[22] and in this case OSHA acted pursuant

---

[19]5 U.S.C. § 552(b)(7)(C).

[20]See Ray, 502 U.S. at 175.

[21]5 U.S.C. § 552(b)(7).

[22]See 29 U.S.C. § 651(b), which declares a congressional "purpose and policy" to
> assure . . . safe and healthful working conditions and to preserve our human resources--
> . . .
> (10) by providing an effective enforcement program which shall

10

to its statutory mandate to inspect workplaces, question employees, and cite employers that violate safety and health regulations.[23] Although the specific OSHA context is new for this Circuit, we have previously held that other agencies' civil law-enforcement records fall under exemption 7.[24]

In its effort to overcome that holding, Cooper asserts that OSHA has not met its burden of showing a law-enforcement purpose in this case.[25] Even if we assume without granting that OSHA is a "mixed function" agency which has both law-enforcement and other missions, OSHA need only show that it _actually_ assembled the requested records for a law-enforcement purpose,[26] that is, in a

---

include a prohibition against giving advance notice of any inspection and sanctions for any individual violating this prohibition.

[23]_See_ 29 U.S.C. § 657-58. Section 659, entitled "Enforcement procedures," enables OSHA to assess penalties against employers found in violation of occupational safety standards. Section 666 permits civil penalties of up to $70,000 and, for a willful or repeated violation, criminal penalties of up to a year in prison.

[24]_See_ _Pope_, 599 F.2d at 1386 (holding that enforcing regulation of legal practice before the IRS was a "law enforcement purpose" under exemption 7, which covers "civil and regulatory proceedings as well as [ ] criminal matters"); _Evans v. Dep't of Transportation_, 446 F.2d 821, 823 (5th Cir. 1971) (applying exemption 7 to investigative records of the Federal Aviation Administration).

[25]_See_ _Avondale_, 90 F.3d at 962 ("[T]he Government has the burden of proving the existence of such a compilation for such a purpose.").

[26]_See_ _Pratt v. Webster_, 673 F.2d 408, 420-21 (D.C. Cir. 1982).

focused inquiry on specific violations of the law.[27]  Here, evidence of such a focused inquiry pervades the record: OSHA inspected the Mont Belvieu plant to determine whether Lyondell violated safety standards.

We reject out of hand Cooper's contentions on this point and move on to the crux of exemption 7(C):  determining and weighing the privacy and public interests.

b.    Privacy Interest: Preventing Employer Retaliation

To analyze privacy interests here, we distinguish among three types of information in OSHA's file.  We shall refer to these types of information as (1) identity, (2) linking, and (3) substantive.

Identity information includes basic personal data such as the witness's name, address, telephone number, and Social Security number.  This type of information is not at issue in this case.  Ever since the administrative appeal before the DOL, Cooper has consistently emphasized that it does not seek any identity information in the deponents' statements.  In any event, the case law consistently supports agency redactions of identity information.[28]

Substantive information here would be the bare facts about the

---

[27]See Church of Scientology v. Dep't of the Army, 611 F.2d 738, 748 (9th Cir. 1980); Rural Housing Alliance v. United States Dep't of Agriculture, 498 F.2d 73, 81–82 (D.C. Cir. 1974).

[28]See, e.g., SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding identity information about individuals categorically nondisclosable) (collecting cases).

12

explosion.  OSHA does not allege any privacy interest with respect to substantive information.

Linking information lies at the core of OSHA's argument.  If disclosed, linking information, in combination with data from other sources (including the depositions), could enable Lyondell to determine which deponent told OSHA what.  This possibility caused the district court to find that the deponents "face[d] a myriad of possible adverse consequences [to] themselves, their families, and their jobs if their statements are disclosed."[29]  Left unstated by the district court, but emphasized by OSHA, is the possibility that, even though OSHA has closed its investigation, Lyondell could retaliate against witnesses who gave OSHA information that would damage Lyondell in the tort case.

The cases generally support a privacy interest in preventing employer retaliation.  The Supreme Court has held that a fairly analogous interest against retaliation —— by the Haitian government against persons who had attempted to enter the United States —— "must be given great weight" in a FOIA case, and on that basis upheld the State Department's redaction of identity information from interview summaries that it released.[30]  In the OSHA context, even before an amendment in 1986 eased agencies' burden in withholding records under exemption 7(C), other courts acknowledged

[29]Cooper, 188 F. Supp. 2d at 762.

[30]Ray, 502 U.S. at 177.

13

that workers have a privacy interest in OSHA's records.  The

district court relied on these cases for the proposition that

"courts protect identities of employee-witnesses in the course of

an OSHA investigation with respect to information that was given to

the agency."[31]  These cases do not, however, support OSHA's refusal

to disclose entire witness statements.  Rather, two of these

opinions upheld OSHA's redaction only of witnesses' names,

addresses, and other identity information.[32]  The third affirmed

OSHA's refusal to release "any statement that might reveal

[employee-witnesses'] identities," —— linking information —— but it

did so under exemption 7(D).[33]

Whether a privacy interest against employer retaliation exists

in this case depends on whether we treat this case categorically or

fact-specifically.  Because this dichotomy affects two other

_____

[31]Cooper, 118 F. Supp. 2d at 761.

[32]See Cuccaro v. Secretary of Labor, 770 F.2d 355, 359–60 (3d Cir. 1985) ("OSHA withheld those portions of documents which contained the home addresses and names of employees and employee representatives and names of employees contacted during the investigations."); Miles v. United States Dep't of Labor, 546 F. Supp. 437, 440–41 (M.D. Pa. 1982) ("In this case, the names and, in some instances, addresses and telephone numbers of persons contacted during OSHA's investigation or otherwise identified in the file were deleted pursuant to this exemption.").

[33]Lloyd and Henniger v. Marshall, 526 F. Supp. 485, 487 (M.D. Fla. 1981) (emphasis added).  "The material plaintiff seeks in this action is of three types: certain opinions and recommendations of the compliance officer that investigated the accident, the home addresses of certain witnesses to the accident and of several employees, and those portions of certain witnesses' statements that would reveal the identities of the witnesses."  Id. (emphasis added).

14

aspects of this case, we will resolve it after we discuss them.

### c. Public Interests: Monitoring OSHA's Activities and Effective OSHA Enforcement

The public interest militating against FOIA exemption 7(C) is the interest of the general public in monitoring its government. Justice Douglas famously described this underlying rationale as "the principle that a democracy cannot function unless the people are permitted to know what their government is up to."[34] More recently, the Supreme Court stated:

> FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed.[35]

We have recognized, as a corollary of these democratic principles, that the "specific motives of the party making the FOIA request are irrelevant."[36] Importantly for this case, the rights of the requester "are no different from those that might be asserted by any other third party, such as a neighbor or prospective employer."[37] Justice Ginsberg has noted that this "main rule serves as a check against selection among requesters, by agencies and reviewing courts, according to idiosyncratic

---

[34]Environmental Protection Agency v. Mink, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting) (internal citation omitted).

[35]Reporters Committee, 489 U.S. at 774.

[36]Halloran, 874 F.2d at 323.

[37]Reporters Committee, 489 U.S. at 771.

15

estimations of the request's or requester's worthiness."[38] Therefore, although we suspect that Cooper seeks the deponents' statements to impeach testimony in the tort suit, our suspicion counts neither in favor of nor against Cooper's FOIA request. (This said, it is also settled law that FOIA was not intended to be a substitute for discovery.[39])

Cooper asserts that the public has an interest in determining whether OSHA inquired into employee training standards, early warning systems, failure of controls, and development of safe work practices, each of which is governed by OSHA regulations. Cooper has also described the public interest here as one in knowing whether the government adequately ensured that Lyondell safely stored millions of barrels of volatile petrochemicals. (The record certainly indicates that the gas release and explosion threatened

---

[38]United States Dep't of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 508 (1994) (Ginsburg, J., concurring).

[39]See John Doe Agency, 493 U.S. at 153 ("In deciding whether Exemption 7 applies, moreover, a court must be mindful of this Court's observations that the FOIA was not intended to supplement or displace rules of discovery."); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 143 (1975) (stating that FOIA's primary purpose was not to benefit private litigants or to substitute for civil discovery); Columbia Packing Co. v. United States Dep't of Agriculture, 563 F.2d 495 (1st Cir. 1977) ("(T)he disclosure provisions of FOIA are not a substitute for discovery and a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA.").
Neither is FOIA the employees' only shield against employer retaliation. OSHA forbids employers from discriminating against employees who have exercised their rights under the statute. 29 U.S.C. § 660(c).

the general public: passers-by on a nearby highway actually drove through the hydrocarbon cloud before it ignited.)

On balance, the cases suggest that there is a cognizable public interest in monitoring agencies' enforcement of the law in specific instances.  The Supreme Court found a public interest in the release of witness interviews that would show whether the State Department was adequately monitoring Haiti's compliance with its commitment not to persecute refugees.[40]  Those interviews, the Court noted, would "reveal how many returnees were interviewed, when the interviews took place, [and] the contents of individual interviews."[41]  Similarly, the Court has also held that redacted summaries of disciplinary hearings at the United States Air Force Academy "would explain how the disciplinary procedures actually functioned and therefore were an appropriate subject of a FOIA request."[42]

We have reached the same conclusion in similar cases.  We recently held that the public had an interest in knowing the content of award orders issued by the Army during the Vietnam War, both as historical records and as means by which watchdog groups could root out fraudulent claims to military decorations.[43]  More

---

[40]Ray, 502 U.S. 164 at 178.

[41]Id.

[42]Reporters Committee, 489 U.S. at 773.

[43]Sherman v. United States Dep't of the Army, 24 F.3d 357, 366 (5th Cir. 2001).

17

analogously to this case, we held that voting lists in a union election gave the requester "information which it needs to determine whether the NLRB is properly conducting its elections," because the requester alleged instances of vote fraud.[44] And perhaps most on point, because we were considering an agency's investigation of a single possible violation, we have held that "the public has an interest in learning about the nature, scope, and results of the [Veterans Administration's] investigation of, and its relationship with, one of its contractors."[45]

The DOL offers a line of cases from the D.C. Circuit to suggest that Cooper must bolster the general public interest in monitoring official actions with a showing of agency irregularity or illegality, which concededly is absent here. Those cases, however, are inapposite. One involved a highly tenuous public interest: The court upheld the National Park Service's refusal to release photographs of Vincent Foster's suicide wounds because the requester had not shown any evidence that four investigating agencies had falsified the cause of death.[46] The public interest at stake here is much broader and more substantial and could be asserted by environmental watchdog groups, researchers into OSHA's enforcement practices, neighbors of the Mont Belvieu plant, or

[44]Avondale, 90 F.3d at 955.

[45]Halloran, 874 F.2d at 324.

[46]Accuracy in Media, Inc. v. National Park Service, 194 F.3d 120, 122, 124 (D.C. Cir. 1999).

18

drivers on the beclouded highway. The other cases relied on by OSHA upheld agency redaction of names and addresses from released documents, not the withholding of entire records, because the requester had not shown agency illegality or wrongdoing that would justify following up with individuals mentioned in the records.[47] As Cooper does not seek identity information, no showing of agency irregularity or illegality is required here.

The district court did not state whether Cooper had succeeded in making out a public interest.[48] Rather, the court agreed with OSHA that there was a public interest in nondisclosure because "disclosure of private witness information would undermine [OSHA's] investigative powers" by chilling future cooperation.[49] For evidentiary support of this proposition, OSHA cited the Miller declaration, which broadly stated the agency's policy position on this point. We view the declaration as supporting a categorical holding, but not a fact-specific one.

---

[47]See McCutchen v. United States Dep't of Health and Human Services, 30 F.3d 183, 184, 188–89 (D.C. Cir. 1994) (explaining that "A mere desire to review how an agency is doing its job . . . does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)" and on that basis affirming redaction of names of investigated scientists and complainants against them); SafeCard Services, 926 F.2d at 1206 ("We now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure.").

[48]Cooper, 118 F. Supp. 2d at 762–63.

[49]Id.

19

In two ways, therefore, our 7(C) analysis turns on how we resolve the categorical/fact-specific dichotomy. Our analysis of the confidentiality exemption raises this dichotomy for the third and final time.

### 2. Exemption 7(D): Disclosure of Identity of a Confidential Source

OSHA also relied on exemption 7(D), which provides that FOIA does not apply to

> records or information compiled for law enforcement purposes, but only to the extent that the production of such...records or information...(D) could reasonably be expected to disclose the identity of a confidential source..., and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

It is readily apparent from exemption 7(D)'s language, unlike that of exemption 7(C), that Congress distinguished between the identity of the source and the information imparted by that source. Under 7(D), the government has clear statutory authority to withhold both the source and the information with respect to criminal investigations; but neither OSHA nor the district court characterizes the Mont Belvieu investigation as criminal.[50] Thus the criminal cases that OSHA and the district court cite with respect to exemption 7(D) do not control here. Neither is national

---

[50]OSHA can impose criminal penalties only in cases of (1) employee death; (2) advance notice of an inspection, or (3) a false statement. 29 U.S.C. § 666.

20

security involved here. We are therefore dealing with only the first prong of 7(D), disclosure of the identity of a confidential source.

The Supreme Court has emphasized that the issue under exemption 7(D) is "not whether the requested <u>document</u> is of the type that the agency usually treats as confidential, but whether the particular <u>source</u> spoke with an understanding that the communication would remain confidential."[51] Such an understanding can arise either explicitly, through the government's assurances to the source, or implicitly, through the facts or circumstances surrounding the source's statement.[52]

a.   Express Confidentiality

Regarding explicit confidentiality, one portion of the Miller declaration —— the sole affidavit supporting OSHA'a nondisclosure —— vaguely states that according to standard procedure, OSHA assured the deponents that their statements would remain confidential.[53] The district court seems to have accepted this bald conclusion when it held that "[t]he record indicates that all employee-witnesses. . .were explicitly. . .assured the utmost

---

[51]<u>United States Dep't of Justice v. Landano</u>, 508 U.S. 165, 172 (1993).

[52]<u>Id.</u> at 172.

[53]Miller declaration at 4 ("[T]he government has expressly assured the statement-givers that their identities would be held in confidence with respect to what they told the agency.").

21

confidentiality."[54]  This was error, for another passage of the Miller declaration reflects that Ms. Miller had no idea whether the OSHA inspector provided explicit assurances.[55]  The government cannot meet its burden with an internally inconsistent, self-contradictory affidavit.

OSHA nevertheless urges that, because it is its established policy explicitly to assure employee-witnesses of confidentiality, we should presume regularity in the inspector's actions in this case.  Regardless of whether this argument accurately depicts OSHA's standard procedures,[56] the sole case from this Circuit that OSHA cites for this presumption is a wholly inapposite habeas corpus case in which we presumed that a district attorney, "as an officer of the court," acted constitutionally in interviewing a criminal defendant.[57]  OSHA inspectors are not officers of the court, and there is no constitutional question here.

---

[54]Cooper, 118 F. Supp. 2d at 763.

[55]Miller declaration at 2:
It is established procedure for OSHA Compliance Safety and Health Officers [ ] to assure all employee-witnesses interviewed that their identities will be protected with respect to what they relate to the agency.  There is no reason to believe this case was any exception.

[56]See OSHA Field Inspection Reference Manual CPL 2.103 § 6 ch. IIA.4.e(5)(a) (emphasis added):
Interviews shall normally be reduced to writing, and the individual shall be encouraged to sign and date the statement. The [OSHA investigator] shall assure the individual that the statement will be held confidential to the extent allowed by law, but they may be used in court/hearings.

[57]See Nash v. Estelle, 597 F.2d 513, 518 (5th Cir. 1979).

22

Furthermore, recent cases from the D.C. Circuit strongly suggest that a presumption of regular explicit confidentiality should not arise in the FOIA context. For example, in a FOIA case that grew out of a <u>criminal</u> investigation, that court rejected the FBI's similarly conclusional assertions of obvious express confidentiality:

> This may be obvious to the affiant, but it is not obvious to us. This bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient.
> . . .
> At the very least the government must indicate where these assurances of confidentiality are memorialized.[58]

We agree with this standard.

Here, OSHA has given us no such indication, and our <u>in camera</u> review of the requested material unearthed no evidence of express assurances. (One statement was even signed by two Lyondell superintendents in addition to the interviewed employee.) Its inspector may have given explicit assurances of confidentiality, but OSHA has not proven this.

### b.    Implied Confidentiality

The government can establish implied confidentiality in two ways: by specifically showing that circumstances surrounding the investigation support an inference of confidentiality or by

---

[58]<u>Billington v. United States Dep't of Justice</u>, 233 F.3d 581, 585 (D.C. Cir. 2000) (citing <u>Campbell v. United States Dep't of Justice</u>, 164 F.3d 20, 30 (D.C. Cir. 1998) ("[T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption.")).

categorically establishing that a class of records merits a presumption of confidentiality.

To determine whether to presume that employee-witnesses' statements to OSHA generally are categorically confidential gives us our first chance to interpret United States v. Landano.[59] There, an inmate convicted of murdering a police officer sought the FBI's files on the case, and the Bureau responded with an affidavit asserting that those sources it redacted should be presumed confidential.[60] The Supreme Court held that the FBI's files were not entitled to a presumption of inferred confidentiality, although "more narrowly defined circumstances" can support an inference, and "when circumstances such as the nature of the crime investigated and the witness' [sic] relation to it support an inference of confidentiality, the Government is entitled to a presumption."[61] Such circumstances would include cases in which an informant has witnessed a gang-related murder or is paid to squeal.[62]

An authoritative survey of post-Landano cases concludes that other courts have found a categorical presumption of implied confidentiality in investigations of

organized crime, murder, drug trafficking, extortion,

---

[59]United States Dep't of Justice v. Landano, 508 U.S. 165 (1993).

[60]Id. at 167–68.

[61]Id. at 181.

[62]Id. at 179.

24

illegal possession of firearms, domestic terrorism, national security, loan sharking and gambling, armed bank robbery, bribery, interstate transportation of stolen property, and passport fraud and contempt of Congress.[63]

No stretch of the ejusdem generis maxim can shoe-horn the instant investigation into the class illustrated by that list. For us to hold on the strength of that survey that OSHA's investigative records, as a category, are implicitly confidential would be unwarranted and would plow new ground.

The second way implied confidentiality can arise is through the specific circumstances of a particular investigation. Once again, the record is bare on this point. The Miller declaration makes a strong categorical case, but its assertions with respect to the deponents' statements here are baldly conclusional.

OHSA cites a case from the Eleventh Circuit, L & C Marine, for the principle that such conclusional statements can establish implied confidentiality in particular instances. In that case, however, OSHA released "most of the file" on a maritime accident, deleting "names, addresses and other identifying information"; and the government filed an affidavit from the OSHA inspection officer who had interviewed the four witnesses to the accident.[64] Language from L & C Marine supporting a "presumption" refers not to the presumption that OSHA would have us apply here, but rather to the

_____

[63]U.S. Department of Justice, FREEDOM OF INFORMATION ACT GUIDE & PRIVACY ACT OVERVIEW 416-18 (GPO 2000) (collecting cases).

[64]L & C Marine Transport, Ltd. v. United States, 740 F.2d 919, 921-22 (11th Cir. 1984).

25

presumption that OSHA may <u>offer</u> confidentiality to witnesses without waiting for them to ask for it.[65]  Indeed, <u>L & C Marine</u> suggests that no presumption of implied confidentiality should exist in the OSHA context, and that OSHA must show specific facts to justify it.  Such specifics being absent from this record, we find no implied confidentiality here.

        c.    Summary

To summarize, OSHA has not made a sufficient factual showing in this case with respect to either explicit or implied confidentiality.  Exemption 7(D) therefore does not protect the material at issue —— unless we treat this case categorically.

E.    <u>Framing the Case</u>

Three issues, and therefore both exemptions, turn on whether we treat this case categorically or fact-specifically.  As general propositions, (1) the privacy interest against employer retaliation, (2) the public interest in effective OSHA enforcement, and (3) the rationale for implied confidentiality for workers who give statements, are all categorically valid; but they have little purchase here because of the specific facts of this case.  Thus, a categorical treatment would tip in OSHA's favor; a fact-specific treatment would swing the case Cooper's way.  We must, therefore, resolve this dichotomy.

    1.    <u>Categorical Approach</u>

---

[65]<u>Id</u>. at 924 n.5.

The Supreme Court teaches that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction."[66]   As OSHA contends, employees who consent to interviews may want and expect the agency to keep their statements private and their identities confidential.   Framed thus, on the categorical plane, there is no issue of material fact with respect to either exemption.   Cooper has presented no evidence to counter OSHA's general assertion that, to obtain the information that it needs to enforce the law, the agency must safeguard the anonymity of employee-witnesses.   Therefore, under exemption 7(D), implied confidentiality exists; and under exemption 7(C), the combination of the privacy interest against employer retaliation and the public interest in effective enforcement trumps the public's interest in monitoring OSHA's investigation into the explosion and fire.   We could hold, therefore, that statements to OSHA by employee-witnesses are a characteristic genus suitable for categorical treatment.   Generally, the context of many OSHA investigations, in which employee informants alert the agency to workplace violations that might otherwise go unnoticed, would support that holding.   Even if potentially justifiable in another case, however, such an outcome strikes us as unsustainable here. As the following fact-specific discussion will show, applying such

_____

[66]Reporters Committee, 489 U.S. at 776.

27

a general rule to the instant case, much less announcing it here, would be imprudent if not just plain wrong, and might require us concomitantly to create an exception. We therefore decline to view this case categorically, analyzing it fact-specifically instead.

2.    Fact-Specific Approach

With respect to the three issues to which a categorical holding might be possible, the operable facts before us are so unsupportive of categorical treatment that they mandate resolution of this case on its own merits. The fire and explosions were widely publicized. OSHA learned of the explosion from the news media, not from an informant. Bass, Hutter, and Squier were the only employees on duty when the explosion occurred and the fire began, so common sense would have OSHA interview them as soon as it learned about the explosion. The fact that those individuals gave statements to OSHA is known to Lyondell, which also possesses their very detailed depositions. Nothing in the record even suggests that Lyondell has threatened retaliation against the deponents, whom the district court's opinion named.

The Miller declaration does not describe why release of linking information in the requested material would impede effective OSHA investigations, threaten the privacy of persons mentioned in that material, or reveal confidential identities.[67]

_____

[67]See Alirez v. NLRB, 676 F.2d 423, 428 (10th Cir. 1982) ("The problems in undertaking to decide which portions of an employee's statement may be released to his employer without revealing that employee's identity are enormous, if, indeed, not insoluble.

28

The declaration simply does not address the unusual circumstances before us.  On a fact-specific approach, the Miller declaration simply does not carry the government's burden of proof.

Furthermore, our thorough in camera review confirms our belief that –– with the exception of one page of material –– linking information in the requested material is not exempt from disclosure.  Compared to the depositions, the deponents' statements give fresher accounts of the explosion and fire, more specifics on the witnesses' impressions and emotional reactions, and better descriptions of what the deponents did to help put out the fire.  As far as we can tell, none of this detail contradicts the depositions sufficiently to further substantiate the possibility of employer retaliation; neither is any of it personally private.  The fourth statement, of which we only became aware as a result of our in camera review, has already been seen by two Lyondell supervisors, who signed it.  (To describe the one page that we conclude is exempt would threaten that which the exemptions protect; this we decline to do.)

On the fact-specific level, therefore, the evidence does not support summary judgment for OSHA.  On the contrary, it supports summary judgment for Cooper.  Under these facts, in the context of

---

Merely deleting the name from the statement would not insure against identification, since the employee's narrative, or part of it, may be such that the employer could identify the employee involved, or could narrow the group down to two or three employees.") (emphasis added).  Here, of course, the group is already narrowed down.

exemption 7(C), the public interest in monitoring OSHA's investigation outweighs any possible interest in effective enforcement or protection of employees from retaliation, neither of which has sway here. Similarly, under exemption 7(D), the record is essentially devoid of evidence to support a finding of implicit confidentiality. In closing, we emphasize that each fact-specific analysis depends on the discrete facts before the court that conducts the review.

## III. CONCLUSION

The identity information in the requested material is exempt from disclosure under FOIA, but the linking information is not.[68] We affirm the district court with respect to the identity information but reverse with respect to the linking information. To avoid the waste of judicial resources, time, and money, we shall not remand to the district court to repeat the same <u>in camera</u> review that we have undertaken ourselves. Instead, we render judgment for Cooper, ordering OSHA to furnish Cooper forthwith copies of the three deponents' statements and the fourth statement as well, after redacting all identity information (i.e., names and addresses, including those of other witnesses and of the OSHA

---

[68]Our result here accords with the view of two justices in <u>Ray</u>, who urged in the exemption 6 context that courts should focus "solely upon what the requested information <u>reveals</u>, not upon what it might lead to." <u>Ray</u>, 502 U.S. at 180 (Scalia, J., concurring). <u>See also</u> <u>Sherman</u>, 244 F.3d at 366 n.10 (noting that the Supreme Court has reserved judgment on this "derivative use" issue). Because we conclude that OSHA should release linking information here, our holding does not implicate the "derivative use" theory.

inspector) but redacting no other information. OSHA may nevertheless continue to withhold page number 19 in the agency's sealed filing.

AFFIRMED in part, REVERSED in part, and RENDERED.