**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 24, 2010

Charles R. Fulbruge III
Clerk

No. 08-20724

MARK E BATTON,

Plaintiff - Appellant

v.

MARK W EVERS, Commissioner Internal Revenue Service; UNITED
STATES OF AMERICA,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARZA, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Mark E. Batton appeals the district court's grant of summary judgment in favor of the Internal Revenue Service ("IRS") on his Freedom of Information Act ("FOIA") claims.[1] He also asserts that the district court erred

---

[1] The IRS correctly notes that the appellant improperly named the United States and Mark W. Evers, the Commissioner of the Internal Revenue Service (whose real name is Mark W. Everson), as defendants. Under the FOIA, a court has jurisdiction to "enjoin the *agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (2006) (emphasis added). A FOIA plaintiff may not assert a claim against an individual federal official; the proper defendant is the agency. *See Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) ("Neither the Freedom of Information Act nor the Privacy Act creates a cause of action for a suit against an individual

No. 08-20724

by denying his motion for a *Vaughn* index, quashing the subpoenas he served on several IRS agents, and denying his motion for attorneys' fees and costs. We conclude that the district court abused its discretion by failing to order a *Vaughn* index; accordingly, we REVERSE the award of summary judgment and REMAND for further proceedings.

## I. Background

In 2005, the IRS conducted an audit of taxpayer Mark E. Batton ("Batton") to assess his federal income tax liabilities for the tax years 2001 to 2003.[2] While the IRS has not brought any criminal charges against Batton,[3] it has developed a substantial file concerning his potential tax liabilities. It is this file that is the subject of the instant litigation.

On November 7, 2006, Batton, acting through his attorney, filed a FOIA request, seeking all information and documents relating to the audit that are in the possession of the IRS. *See* 5 U.S.C. § 552 (2006). Batton's FOIA request identified sixteen categories of documents to be produced, including his 2001 federal tax return; copies of all communications between himself and the IRS pertaining to his federal tax liabilities for the 2001 to 2003 tax years; and copies

employee of a federal agency."); *see also Santos v. DEA*, 357 F. Supp. 2d 33, 36 (D.D.C. 2004) ("A plaintiff may not assert a FOIA claim against individual federal officials."). Accordingly, neither the United States nor Mr. "Evers" is a proper party to this action. On remand, the plaintiff should be given an opportunity to substitute the IRS as the proper party to this action.

[2] During its investigation, the IRS served Batton with a summons requiring him to testify and produce documents relating to his tax filings. When Batton did not respond, the IRS brought an action to enforce the summons. The district court found Batton in contempt and ordered him to be incarcerated. Batton appealed to this court and we affirmed. *United States v. Batton*, 267 F. App'x 363 (5th Cir.) (unpublished), *cert. denied*, 129 S. Ct. 310 (2008). Batton later filed a motion for a stay of detention pending appeal, which was also denied. *United States v. Batton*, 287 F. App'x 414 (5th Cir. 2008) (unpublished). Batton has subsequently been released from incarceration.

[3] The IRS informed this court at oral argument that it is no longer investigating Batton's criminal liability; it is, however, continuing to investigate his potential civil liability for tax years 2001 to 2003.

2

of any checks, deposit slips, or other banking records related to his tax liabilities for those years.

On December 8, 2006, the IRS responded to Batton's FOIA request by informing Batton that additional time was needed to comply with his request.[4] The IRS sent similar letters to Batton in January, February, March, May, July, and August 2007.[5]  During this time, the IRS did not produce any of the requested documents. On September 6, 2007, Batton filed suit in federal district court, seeking disclosure of the requested documents, as well as costs and attorneys' fees.

On January 18, 2008, the IRS notified Batton that approximately 5,318 pages of documents had been located and identified as responsive to his FOIA request.  At that time, the IRS released 953 pages of documents to Batton, of which thirty-four pages were partially redacted.  On July 29, 2008, the IRS released an additional 249 pages of documents pursuant to Batton's FOIA request.  Only one of the 249 pages was partially redacted.

Batton then subpoenaed five IRS agents for depositions and to compel production of the remaining documents relating to his FOIA request.  The IRS moved to quash the subpoenas.  The district court granted the motion.  Batton

---

[4] FOIA obligates the IRS to determine within twenty days of receiving a request whether it will comply and "immediately notify the person making such request of such determination and the reasons therefor."  § 552(a)(6)(A)(i).  The statute does authorize an agency to grant itself a ten-day extension before commencing the investigation, § 552(a)(6)(B)(i), but states that a person making the FOIA request "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions."  § 552(a)(6)(C)(i).  A court may then authorize the agency to take additional time to review the records only if the agency demonstrates that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  *Id.*

[5] In a letter dated February 28, 2007, the IRS informed Batton that he needed to pay a $300 fee before the IRS could process his requested documents.  The letter instructed Batton that failure to pay the fee by March 30, 2007, would result in his request being terminated and the file closed.  Batton paid the fee before the deadline.

later filed a motion to extend the discovery period. That motion was denied by the district court.

The IRS moved for summary judgment, asserting that it was entitled to withhold the requested documents under several exemptions to the FOIA. In support of its motion, the IRS submitted declarations by IRS agents Sarah Sheldon ("the Sheldon declaration"), Michael Gregory ("the Gregory declaration"), and Karen Hines ("the Hines declaration"). The Sheldon declaration identified two broad types of documents—"Examination Workpapers" and "Agent's Working Papers"—and the purportedly applicable exemptions justifying withholding. For each statutory exemption asserted, Sheldon listed the page numbers of the file that were withheld in whole or in part. The Gregory declaration supplemented the Sheldon declaration and asserted that Examination Workpapers are exempt from disclosure because they would constitute a "serious impairment to the Federal tax administration." The Hines declaration set forth the procedures by which the IRS conducted its search for responsive documents.

Batton moved to compel the IRS to produce a more detailed index identifying the documents located in response to his FOIA request and articulating a basis for the withholding of each document ("a *Vaughn* index"). *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *see also Jones v. FBI*, 41 F.3d 238, 241 (6th Cir. 1994) ("A *Vaughn* index is a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material."). The district court denied Batton's motion for a *Vaughn* index and granted the IRS's motion for summary judgment. The court held that Batton did not create a genuine issue of material fact about the application of any of the exemptions claimed by the IRS.

No. 08-20724

Batton filed this timely appeal.  He asserts that the district court erred by denying his motion to compel production of a *Vaughn* index, quashing his subpoenas, granting summary judgment, and denying him costs and attorneys' fees.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003). In general, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  In the FOIA context, however, the traditional standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA*, 280 F.3d 539, 543 (5th Cir. 2002).[6]   Accordingly, the FOIA statute provides that, when the Government withholds information from disclosure, the agency has the burden to prove de novo that the information is exempt from disclosure. § 552(a)(4)(B).  Thus, "because the burden to establish an exemption remains with the agency, the district court should not grant summary judgment based on a 'conclusory and generalized' assertion, even if the FOIA requester has

---

[6]  The parties concede a de novo standard applies here.  Earlier precedents have suggested what appears to be a different standard of review for FOIA summary judgments. *Villanueva v. Dep't of Justice*, 782 F.2d 528, 530 (5th Cir. 1986) ("An appellate court reviewing a trial court's Freedom of Information Act decision must determine whether the district court had an adequate factual basis for its decision, and, if so, whether the decision it reached was clearly erroneous.").  However, a review of the cases shows that the focus in each is different. In *Villanueva*, the court conducted an in camera inspection of the documents and, necessarily, made findings of fact thereupon.  In that instance, of course, our usual standard of review for fact findings—the clearly erroneous standard—would apply.  Thus, where the court necessarily has to determine facts as part of the FOIA withholding analysis, the clearly erroneous standard applies.  However, where, as here (and as in *Cooper*) the question is more of a threshold one of whether the court had sufficient information from which to determine the exemptions—a question of law—the de novo standard applies.

not controverted that assertion." *Cooper Cameron Corp.*, 280 F.3d at 543 (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999)).

In applying this standard, we are mindful of the purpose behind the FOIA. The FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). The exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Id*. Thus, in a FOIA case, a court "generally will grant an agency's motion for summary judgment *only* if the agency identifies the documents at issue and explains why they fall under exemptions." *Cooper Cameron Corp.*, 280 F.3d at 543 (emphasis added).

Conversely, we review a district court's decision whether to order the production of a *Vaughn* index, as well as general discovery orders, for an abuse of discretion. *Stephenson v. IRS*, 629 F.2d 1140, 1145 (5th Cir. 1980) ("Resort to in camera review is discretionary, as is resort to a Vaughn index.") (internal citation omitted). This court has stated that, while the FOIA "leaves to the [district] court's discretion whether to order an examination of the contents of the agency records at issue, in camera," in determining whether the claimed exemptions apply, "the legislative intent for exercise of this discretion is relatively clear." *Id*. at 1144. This is because "in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit." *Id*. at 1145.

Finally, in analyzing the affidavits and declarations submitted by the government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). The presumption of legitimacy, however, does not

relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted. *Stephenson*, 629 F.2d at 1145.

With these standards in mind, we now turn to the merits of this case.

### III.  The Adequacy of the Search

As a threshold matter, we must first address whether the IRS's search for responsive documents was adequate. *Santos v. DEA*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004).  An agency may demonstrate that it conducted an adequate search by showing that it used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

In this case, the IRS relied on the Sheldon and Hines declarations to demonstrate the adequacy of its search. The Sheldon declaration states that the Oklahoma City Disclosure Office searched documents identified by the agent assigned to investigate Batton, "as well as internal databases and systems of records to locate documents responsive to [Batton's] FOIA request.  The [IRS] conducted the search based on the personal information provided by [Batton] in his FOIA request within the databases and systems of records available to the Disclosure Office." The Hines declaration lists the particular databases that were searched and explains that these databases contain the type of information requested by Batton.

We conclude that, based on the Sheldon and Hines declarations, the IRS has demonstrated that it performed a search reasonably calculated to yield responsive documents.  The IRS's search uncovered over 5,200 responsive documents using the personal identifying information contained in Batton's FOIA request.  The Hines declaration states that the search was conducted using the available electronic databases, as well as paper documents and documents in the possession of the assigned IRS investigative agent.  While

No. 08-20724

Batton asserts that other documents may exist that were not located in the search, we must decide only whether the search was adequate. *See In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) ("The issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate."); *Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system."). We conclude that the Sheldon and Hines declarations sufficiently prove the adequacy and reasonableness of the IRS's search.

## IV. The *Vaughn* Index

The central issue on appeal is whether the declarations submitted by the IRS in support of its motion for summary judgment sufficiently identify the documents at issue, including the relevant information contained in each document, and explain why the asserted exemptions justify withholding. *Cooper Cameron Corp.*, 280 F.3d at 543. Batton asserts that the district court should have ordered a more detailed *Vaughn* index because it is impossible to determine whether the claimed exemptions apply to the documents based on the Sheldon and Gregory declarations. The IRS asserts that it is entitled to withhold Examination Workpapers[7] and Agent's Working Papers[8] under numerous

---

[7] The Sheldon declaration defines "Examination Workpapers," as:

[D]ocuments contain[ing] the agent's development and analysis of the evidence obtained during the course of his examination of plaintiff and reflects the agent's belief that plaintiff has not complied with the Internal Revenue Code. The documents consist of information gathered from public and private sources, interview notes, case history notes, and internal transcripts prepared by the IRS. The revenue agent conducted on-line research of public websites to obtain information relating to state tax and offshore banking. The revenue agent also obtained additional information from private third parties regarding transactions and banking information. The interview notes consist of the revenue agent's

No. 08-20724

exemptions. The Sheldon declaration sets forth the different exemptions applicable to certain categories of documents and their corresponding page numbers. We address each of the asserted exemptions in turn.

### *Examination Workpapers*

1. Exemption 3 & Internal Revenue Code § 6103(a)—Third Party Tax Returns and Tax Information

The Sheldon declaration asserts that "certain Examination Workpapers consisting of case history notes and information from private sources [that] contain return information for persons other than plaintiff are exempt from

---

notes for interviews conducted with the plaintiff, plaintiff's representative, and third parties. Finally, the case history notes consist of the revenue agent's log of activity in the examination including contacts made with plaintiff, powers of attorney, third parties, contacts with the IRS employees and managers, information requested and received from plaintiff, as well as the agent's thoughts on how to proceed.

[8] The Sheldon declaration defines "Agent's Working Papers" as:

[T]he revenue agents' notes, calculations, and summaries . . . prepared by the agents as part of their examination of plaintiff's tax liabilities and [that] may be used to determine whether to refer plaintiff's case to Criminal Investigation for a possible investigation. The working papers consist of the revenue agents' analysis of different transactions and plaintiff's financial statements. The notes summarize the issue(s), the facts or information gathered and from whom, whether additional documents were requested, the agents' analysis, the provisions of the Internal Revenue Code the agents believed applied, and the agents' conclusions. Portions of the revenue agents' notes contain financial calculations where the agents were calculating the correct amount of income, expenses, or deductions based on the information they gathered during the examinations.

9

disclosure to plaintiff under FOIA exemption (b)(3) in conjunction with Internal Revenue Code § 6103(a)."

FOIA Exemption 3, 5 U.S.C. § 522(b)(3) (2006), states that an agency need not disclose any documents "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." Section 6103(a) of the Internal Revenue Code, in turn, provides that tax returns, as well as return information, are confidential and shall not be disclosed to anyone other than the taxpayer. *See* 26 U.S.C. § 6103(a) (2006).

The IRS asserts that the case history notes and information from private sources are properly withheld under Exemption 3 because they contain third party tax returns and taxpayer information. But it is impossible to tell from the Sheldon declaration and the rest of the summary judgment record what information is contained within the "case history notes and information from private sources" and whether, in whole or in part, the documents contain third party taxpayer information.

While we generally accept a district court's factual descriptions of the contents of the requested documents unless the descriptions are clearly erroneous, *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006), the district court did not make any factual descriptions of the documents in this case or conduct an in camera review. Nor does it logically follow that case history notes and information from private sources contain exclusively third party tax information, rather than segregable portions. We recognize that in many instances an agency may submit an affidavit or declaration categorically describing the types of documents and the applicable exemptions to justify its withholding. But where the agency affidavit fails to identify the particular type of the document being withheld—and the party

seeking disclosure contests the type of information it contains—a district court may not simply rely on a broad categorical approach to withholding. *Cooper Cameron Corp.* 280 F.3d at 553-54.

Indeed, in a case arising under virtually identical circumstances, this court held that a *Vaughn* index or similar procedure must be utilized to determine the factual nature of the information sought and whether that information fell within the statutory exemption asserted. *Stephenson*, 629 F.2d at 1144. In that case, the IRS sought to withhold portions of its investigative file from a requesting taxpayer because, *inter alia*, the investigatory files on the taxpayer "contained certain documents . . . reflecting the tax affairs of unrelated third parties." *Id.* at 1143 n.5. This court vacated the grant of summary judgment and remanded the case to the district court because, in cases where the parties agree that the governmental agency possesses the records and documents, "more is required." *Id.* at 1145. Thus, a court abuses its discretion by refusing to order a *Vaughn* index or similar procedure when it relies "upon agency affidavit in an investigative context when alternative procedures such as sanitized indexing, random or representative sampling in camera with the record sealed for review, oral testimony or combinations thereof would more fully provide an accurate basis for decision." *Id.* at 1145-46.

This conclusion is further bolstered by the statutory scheme of the FOIA. Section 522(b) of the FOIA states that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." In this case, no factual findings were made regarding the content of the documents or whether any third party tax returns contained within the documents were segregable from other portions. *See Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) ("It is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.") (internal

quotation marks and citation omitted).  The general description of "case history notes and information from private parties" does not tell us anything about the individual documents and why more general information—for example, the dates, authors, or brief description of the subject matter of the notes and information—cannot be disclosed.  *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1180-81 (D.C. Cir. 1996) ("Since *Vaughn* and its progeny require that an agency itemize *each* document and explain the connection between the information withheld and the exemption claimed, the Army should be required on remand to provide any disclosable information regarding each document in the . . . 'compilation.'").

We note that agency affidavits are generally accorded a "presumption of legitimacy" unless there is evidence that the agency handled the FOIA request in bad faith.  *See Ray*, 502 U.S. at 179.  Nonetheless, the IRS may not simply rely on a presumption of good faith to prove the applicability of an exemption.  *See, e.g., Cooper Cameron Corp.*, 280 F.3d at 543 (generalized statements are insufficient to carry the agency's burden of proof).  In other words, while we assume that the IRS is telling the truth in its affidavits, its conclusory "say so" does not, alone, carry its burden of establishing an exemption.

In sum, it is impossible to tell based on the Sheldon declaration and the entire summary judgment record whether all of the information contained within the broad category of "case history notes and information from private sources" is exempt from disclosure under Exemption 3 and § 6103(a) of the Internal Revenue Code.  Accordingly, we conclude that the district court abused its discretion by failing to order a *Vaughn* index and granting the IRS summary judgment on the applicability of this exemption.

No. 08-20724

2. Exemption 3 & Internal Revenue Code § 6103(e)(7)—Serious Impairment to the Federal Tax Administration

The Sheldon declaration also asserts that "Examination Workpapers consisting of information from public and private sources as well as interview notes are exempt from disclosure to plaintiff under FOIA exemption (b)(3) in conjunction with I.R.C. § 6103(e)(7), as the [IRS] has determined that the release of this information would constitute a 'serious impairment to the Federal tax administration.'" The declaration further states:

> Pages of the Examination Workpapers were prepared by the revenue agent during the course of his examination of plaintiff and in connection with a possible referral of plaintiff's case to Criminal Investigation for investigation. A referral to Criminal Investigation to date has not been made. The pages withheld represent the revenue agent's development and analysis of evidence obtained during the course of his examinations and, therefore, reflect the agent's basis for believing plaintiff may have failed to comply with the Internal Revenue Code. At present, the release of this information would impair the civil tax examination and impede the IRS's ability to properly enforce the Internal Revenue Laws and further hamper the IRS's ability to collect any tax owed.

The Gregory declaration supplements this conclusion by asserting that the release of "information from public and private sources as well as interview notes . . . would constitute a 'serious impairment of the Federal tax administration.'"

We conclude that the Sheldon and Gregory declarations contain an insufficient description of the withheld documents from which we may conclude that Exemption 3 applies. The declarations fail to describe with specificity the documents constituting "information from public and private sources as well as interview notes" or why the IRS believes that release of these documents would impede its ability to collect any taxes owed. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) ("Categorical description of redacted material

13

coupled with categorical indication of anticipated consequences is clearly inadequate."). Indeed, in *Stephenson*, this court held that such conclusory statements failed to provide an adequate factual basis from which to conclude the documents are exempt. 629 F.2d at 1144 n.9, 1145.

While the Sheldon and Gregory declarations clearly explain that the release of "information from public and private sources as well as interview notes" would impair the IRS's administration of the federal tax laws, we cannot discern the type of information contained within the documents from the declarations. The generic category "information from public and private sources as well as interview notes" prevents this court from meaningfully reviewing the applicability of the exemption. *Stephenson*, 629 F.2d at 1145; *see also Oglesby*, 79 F.3d at 1184 (rejecting the adequacy of the agency's *Vaughn* index because the "affidavits contain only sweeping and conclusory assertions that the agency withheld the documents because they contained material which could reasonably be expected to cause damage to national security [and] offer no functional description of the documents; [the agency] has failed to disclose the types of documents, dates, authors, number of pages, or any other identifying information for the records it has withheld").

Accordingly, we conclude that there is insufficient factual information from which this court may conclude that the agency satisfied its burden of proof in withholding these documents under Exemption 3. As such, it was error to sustain the withholding of these documents without more information in the form of a *Vaughn* index or in camera inspection.

3. Exemptions 6 and 7(C)—Invasion of Personal Privacy

The Sheldon declaration also asserts that "certain Examination Workpapers, including information from public and private sources, and/or portions thereof that contain information pertaining to persons other than plaintiff are exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C)

14

because the release of the information would be an unwarranted invasion of personal privacy of the individuals identified in these records and would provide little, if any, insight into the operations of the IRS."

Exemption 6 provides that an agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6).  Exemption 7(C) provides that an agency need not disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C).

The Supreme Court has clarified that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989) (internal citation and quotation marks omitted).  Instead, the "court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *Id.* at 776.  This court has performed the same analysis in cases arising under Exemption 6. *Avondale Indus., Inc. v. NLRB*, 90 F.3d 955, 960 (5th Cir. 1996).

Here again, we are unable to determine the nature of the withheld documents from the general category "certain Examination Workpapers, including information from public and private sources, and/or portions thereof that contain information pertaining to persons other than plaintiff."  Absent a more detailed description of the types of documents falling within this category, we are unable to meaningfully review the applicability of this exemption.

In so holding, we do not suggest that a listing by categorical type of withheld documents is inappropriate. Indeed, this court has recognized that a categorical approach may be taken to determine whether records are exempt from disclosure in cases that implicate law enforcement records or concerns over an unwarranted invasion of privacy. *Cooper Cameron Corp.*, 280 F.3d at 544 & n.11; *Reporters Comm. for Freedom of the Press*, 489 U.S. at 777-78. But unlike a case where an agency asserts that "rap sheets in general . . . are 'law enforcement records'" that are exempt from disclosure, *Reporters Committee for Freedom of the Press*, 489 U.S. at 779, the Sheldon affidavit does not identify particular types of documents that are categorically exempt. In other words, using the law enforcement example from the *Reporters Committee* case, it is one thing to say that a particular type of document—e.g., a "rap sheet"—is categorically a "law enforcement document" and quite another to say "we withheld a group of law enforcement documents." In this case, the ambiguity in the type of documents withheld and the information contained therein makes it impossible to determine whether the individuals named in the documents have a viable privacy interest. *See Avondale Indus., Inc.*, 90 F.3d at 960.

In short, it is impossible to tell the type of information contained within the broad category of "certain Examination Workpapers, including information from public and private sources." These broad, conclusory descriptions of the documents afford Batton no opportunity to challenge the withholding and offer this court no opportunity to meaningfully review the applicability of the claimed exemptions. *Vaughn*, 484 F.2d at 824-25.

We do not have factual findings to aid our review of the applicability of Exemptions 6 and 7(C), and we cannot determine on this record whether information could be redacted to prevent an invasion of personal privacy. The FOIA authorizes several means of preventing disclosure of third party identifying information. *See* § 552(a)(2) (providing that, "[t]o the extent required

to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction"); § 522(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under [subsection (b)]."). A *Vaughn* index, perhaps coupled with an in camera review of a limited subset of documents, would aid this analysis.

4. Exemption 7(A)—Law Enforcement Purposes

Finally, the Sheldon declaration asserts that "certain documents," in whole or in part, are exempt under § 552(b)(7)(A), which exempts an agency from disclosing "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." The Sheldon declaration states that these documents are exempt under 7(A) because

> [t]here is an on-going examination of the plaintiff's tax liabilities and the release of the withheld information would interfere with the development of the government's case, by prematurely disclosing information to plaintiff before the Service has completed its investigation and made a final determination as to plaintiff's outstanding tax liabilities. Because the examination involves several offshore transactions with plaintiff, a premature release of the agents' analysis and investigative efforts could enable plaintiff to craft explanations or defenses based on this information. Such events would interfere with the Service's ability to determine whether plaintiff has complied with the tax laws, and to correctly determine the Federal taxes owed by plaintiff. The release of this material at this time would impede the IRS's collection and law enforcement efforts.

The Supreme Court has held that generic categorical determinations of exemption may be made under Exception 7(A) for witness statements. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 235-36 (1978). In that case, the

Court held that the entire category of NLRB witness statements were exempt from disclosure under 7(A). Here, it appears that the district court held that the documents were categorically exempt from disclosure under Exemption 7(A) as well. This is a question of law that we review de novo, giving no deference to the district court's decision. *Avondale Indus., Inc.*, 90 F.3d at 958.

But the problem here is that it is impossible to determine the exact *type* of documents that the IRS asserts are exempt under 7(A). Unlike *Robbins*, where the court was presented with the question of whether NLRB witness statements are exempt, the Sheldon affidavit speaks only of "certain documents" that are exempt because disclosure would interfere with law enforcement proceedings. As we discussed above, it is one thing to speak categorically about a particular type of document and quite another to speak categorically about a generic group of documents. The Supreme Court made clear that the *type* of document—for example, witness statements—can lend itself to a categorical claiming of the exemption. 437 U.S. at 241. It expressly refused to find that an agency can simply claim the exemption for everything in a file labeled "investigative." *Id.* at 236. This is plainly insufficient to satisfy the IRS's burden of proving the applicability of the exemption to the withheld documents. *Stephenson*, 629 F.2d at 1145.

Accordingly, we find that the district court abused its discretion by failing to order a *Vaughn* index of the Examination Workpapers. We now turn to the remaining category of documents that the IRS asserts are exempt, the "Agent's Working Papers."

### *Agent's Working Papers*

The Sheldon declaration also asserts that Agent's Working Papers—defined as "documents consisting of the revenue agents' notes, calculations, and summaries"—are exempt from disclosure. We address each of these exemptions in turn.

18

No. 08-20724

1.  Exemption 5—Deliberative Process Privilege

The Sheldon declaration asserts that the Agent's Working Papers "are exempt under FOIA exemption 5 as pre-decisional and part of the deliberative process. The information includes the revenue agent's development and analysis obtained during the course of their examination of plaintiffs [sic], as well as their opinions and recommendations as to the direction of the examination and a possible criminal referral."

Exemption 5 states that an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." § 552(b)(5). Courts have interpreted this provision to cover materials that "reflect the personal opinions of the writer rather than the policy of the agency," *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quotation marks and citation omitted), but not "[f]actual material that does not reveal the deliberative process," *id.* (quotation marks and citation omitted).

We agree that "the revenue agents' development and analysis . . . as well as their opinions and recommendations as to the direction of the examination and a possible criminal referral" are exempt as part of the deliberative process under Exemption 5.

Batton asserts that, while this information may be exempt, factual information contained within the documents is not and the IRS must redact the exempt material to disclose any pertinent factual information. We have no factual findings to review as to whether the Agent's Working Papers include factual information as Batton asserts and, if so, whether that information is segregable. The Sheldon declaration does describe the Agent's Working Papers as including "the facts or information gathered." Accordingly, a factual dispute exists about the content of the Agent's Working Papers. Because the factual content of the documents is unclear, "the applicability of the exemption cannot

19

be assessed" and the court must remand the case for the agency to provide "at least the minimal information necessary to make a determination." *Morley*, 508 F.3d at 1127 (quotation marks and citation omitted).

2. Exemption 7(A)—Law Enforcement Purposes

Finally, the Sheldon affidavit asserts that, for the same reasons the Examination Workpapers are exempt under Exemption 7(A), the Agent's Working Papers are exempt under Exemption 7(A) because disclosure "would interfere with the IRS's on-going examination of the plaintiff."

Again, we are presented with an exemption that often may be appropriately analyzed under a categorical approach. *Robbins Tire & Rubber Co.*, 437 U.S. at 224. Thus, the question is whether the broad category of "Agent's Working Papers" is sufficiently detailed for this court to determine whether Exemption 7(A) applies.

In this respect, the Sheldon declaration does define "Agent's Working Papers" more narrowly than "Examination Workpapers." The declaration defines the documents withheld as "the revenue agents' notes, calculations, and summaries" and asserts that disclosure of these documents would impair the IRS's collection and law enforcement efforts. The IRS asserts that over 2,500 of the withheld pages are immune from disclosure under this exemption.

Nonetheless, this court is bound by prior precedent in determining whether the Sheldon declaration is sufficient to sustain the IRS's burden of proving that Exemption 7(A) applies. In this respect, our decision in *Stephenson* is directly on point. In that case, the IRS asserted that disclosure of similar agent working papers would interfere with the investigation of the requesting taxpayer by revealing the evidence gathered against the taxpayer, as well as "the direction of the investigation, and the scope and limits of the Government's investigation." 629 F.2d at 1143 n.5. The *Stephenson* court held that where the existence of the records is known and a factual dispute exists regarding the

content of the documents, the district court abused its discretion by failing to order a *Vaughn* index or similar device. *Id*. at 1144.

The facts of this case are not distinguishable from the facts in *Stephenson*. The parties do not dispute that the IRS's investigative file exists. The parties disagree regarding the content of the withheld documents because Batton asserts that at least part of these documents contain factual information that must be disclosed under the FOIA. The district court did not order a *Vaughn* index, which would require the IRS to provide a more detailed description of the contents of the withheld documents. Nor did the district court resolve the factual dispute or make a finding regarding segregability. Accordingly, we must remand the case for additional proceedings because we are unable to determine whether the withheld materials, in whole or in part, fall within the exemptions asserted.

In sum, we hold that the district court abused its discretion by failing to order a *Vaughn* index and therefore must reverse the district court's grant of summary judgment in favor of the IRS and remand for further proceedings in accordance with this opinion.

We need not reach the issue of whether Batton is entitled to discovery in this case because we are ordering the production of a *Vaughn* index on remand. Thus, it is premature to decide whether any further discovery is needed after the index is produced. We express no opinion about whether Batton may be entitled to depose IRS agents in future proceedings in this case. Similarly, the issue of whether Batton is entitled to attorneys' fees and costs is not ripe for our review at this time. As a result of our ruling here, we consider both issues—discovery and fees/costs—to be open issues on remand.

V.  Conclusion

No. 08-20724

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of the IRS and REMAND the case to the district court for additional proceedings to establish a factual basis for the asserted exemptions.