# United States Court of Appeals for the Fifth Circuit

_____

No. 25-40188

_____

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2026

Lyle W. Cayce
Clerk

Michael A. Hagar,

*Plaintiff—Appellant*,

*versus*

Federal Bureau of Investigation,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:22-CV-101

_____

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Plaintiff Michael Hagar, proceeding pro se, brought this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, a statute Congress enacted to "ensure an informed citizenry," "check against corruption," and "hold the governors accountable to the governed," *N.L.R.B. v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 242 (1978). Despite its lofty goals, FOIA's disclosure obligations have their limits. Relevant here, FOIA provides a cause of action only for records improperly withheld. Once a record has been turned over, a FOIA request becomes moot. Further, although the statute

No. 25-40188

requires federal agencies to produce records not subject to exemptions, it does not require agencies to create new records.

Hagar sought from the Federal Bureau of Investigation (FBI) production of an email pertinent to his criminal case. He requested the email including unredacted "To" line information listing the names and email addresses of its recipients, as well as the email's complete "header information"—metadata containing time, server, sender and recipient, and other pertinent information. Because Hagar is now in receipt of the "To" line information he previously sought and because releasing the email's header information would require the creation of a new record, we AFFIRM the district court's grant of summary judgment in favor of the FBI. We also AFFIRM the district court's denial of Hagar's post-judgment motions and DISMISS Hagar's claims of judicial misconduct.

## I.

Hagar was convicted of cyberstalking and making interstate threats in 2019. *See generally United States v. Hagar*, 822 F. App'x 361 (6th Cir. 2020). On October 23, 2020, he submitted a FOIA request to the FBI, seeking production of a June 2, 2016, email he sent to employees of two companies from which he had been terminated. Its subject line read, "<Michael Hagar> I AM GOING TO SHOOT ONE OF MY GUARDS SOON." The body of the email then stated, "AND THEN I WILL MAKES CERTAIN ALL OF YOU ARE SHOT ALSO," and continued with repeated profanities. The FBI obtained the email during its investigation of Hagar. Hagar sought production of the unredacted email and complete "header information"— metadata outlining the "path the email followed as it traveled through various mail servers" including times, senders and receivers, and additional information.

No. 25-40188

After an initial production of allegedly incorrect documents in April 2021, the FBI released the body of the June 2, 2016, email in September 2022—redacting the names and email addresses in the "To" line and asserting the redacted information was excepted from production under one of the Privacy Act's law-enforcement exceptions and FOIA Exemptions 6 and 7(C).[1] The FBI also declined to produce the email's header information, asserting that doing so would require the creation of a new record, which FOIA does not mandate. As the FBI's Acting Section Chief of the Record/Information Dissemination Sections (RIDS) Joseph Bender, Jr. explained in a declaration, the email's header information was not "plainly visible" on its face when viewed or printed. To produce that information, Bender asserted that the "FBI would have to copy and paste the header information into a separate text file or Microsoft Word document."

On March 10, 2022, Hagar filed a pro se complaint in the Eastern District of Texas. He then filed a summary judgment motion on August 3, 2022, which the magistrate judge terminated as premature through a scheduling order. Hagar never refiled the motion. Pursuant to the district court's scheduling order, the FBI subsequently moved for summary judgment on May 15, 2023, after which, on August 28, 2023, it sent Hagar an unredacted copy of the email.

---

[1] The Privacy Act prohibits the production of certain records related to criminal matters. *See* 5 U.S.C. § 552a(j)(2).

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). FOIA Exemption 7(C) excludes records or information compiled for law enforcement purposes "but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

3

No. 25-40188

On March 7, 2024, the magistrate judge recommended granting the FBI's motion. The magistrate judge "[a]ssum[ed], without deciding," that, to share the header information with Hagar, the FBI would have to create a new record—a step beyond what FOIA requires. Alternatively, she concluded that the email header information would be subject to FOIA Exemptions 6 and 7(C) and the Privacy Act's law-enforcement exception. The FBI did not invoke these exemptions itself as applied to the header information, since it argued that the "metadata for the header information did not constitute a record for purposes of FOIA" to which an exemption would apply. The magistrate judge separately determined that the "To" line information—names and email addresses—were exempt under the same Privacy Act exception and FOIA Exemptions 6 and 7(C).

The district court adopted the magistrate's report and recommendation, entering final judgment on March 25, 2024. The district court subsequently granted Hagar relief from judgment to file objections to the decision, considered those objections along with several post-judgment motions, and denied all relief on March 18, 2025. Hagar timely appealed.

II.

We review a district court's grant of summary judgment *de novo*, *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010), and may affirm a district court's ruling on any "legally sufficient ground," even if not relied on by the district court, *Jones v. Sheehan, Young & Culp*, 82 F.3d 1334, 1337 (5th Cir. 1996). However, in FOIA cases, when the court "necessarily has to determine facts as part of the FOIA withholding analysis, the clearly erroneous standard applies" to the district court's factual findings. *Batton*, 598 F.3d at 175 n.6. Denials of motions for reconsideration, motions for relief from judgment, and refusals to take judicial notice are reviewed for abuse of discretion. *See Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th

No. 25-40188

Cir. 2017) (motion for reconsideration under FED. R. CIV. P. 59); *Hall v. Louisiana*, 884 F.3d 546, 549 (5th Cir. 2018) (motion for relief from judgment under FED. R. CIV. P. 60(b)); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (refusal to take judicial notice). On the whole, we liberally construe briefs filed by pro se litigants. *See Collins v. Dallas Leadership Foundation*, 77 F.4th 327, 330 (5th Cir. 2023).

## III.

On appeal, Hagar raises five issues: (1) whether the district court erred by dismissing Hagar's motion for summary judgment as premature; (2) whether the district court erred by granting the FBI's motion for summary judgment; (3) whether the district court erred by denying Hagar's motion for reconsideration; (4) whether the district court erred by denying Hagar's motion for relief from judgment; and (5) whether the district court erred by denying Hagar's motion for judicial notice. He levies judicial misconduct claims throughout. We first address the district court's dismissal of Hagar's summary judgment motion. We next cover the district court's grant of summary judgment in favor of the FBI. We then examine Hagar's post-judgment motions. Finally, we take up his judicial misconduct arguments.

### A.

Magistrate judges may not "determine" motions for summary judgment under 28 U.S.C. § 636(b)(1)(A), but they may deal with ordinary, run-of-the-mill pretrial matters. *See id.*; *see also* FED. R. CIV. P. 72(a). Hagar argues that the magistrate judge exceeded her authority by terminating his summary judgment motion for "statistical purposes." He also asserts that the FBI forfeited its arguments in opposition to his summary judgment motion by not responding to its substance. Both contentions are unavailing.

Although we have little case law addressing the contours of the pretrial authority of magistrate judges, we cannot conclude that the

magistrate judge ran afoul of her permissible role. The magistrate judge did not resolve Hagar's summary judgment motion on the merits. Instead, the magistrate judge issued a "scheduling order," setting a schedule for: (1) disclosures; (2) future summary judgment briefing to be initiated by the FBI, which has the burden to prove any exemption, *Batton*, 598 F.3d at 175; and (3) subsequent pretrial evidentiary mechanics, should they be necessary. The scheduling order did terminate Hagar's motion without prejudice. But it did not resolve any of Hagar's arguments, nor preclude him from making them at a later stage, whether in opposition to the FBI's future motion or by seeking leave to move for summary judgment himself. Rather, it set a course of action—disclosures and then summary judgment briefing initiated by the government—par for the course in FOIA actions. *See, e.g.*, *id.* at 173–74. We find this scheduling order to be a proper exercise of the magistrate judge's pretrial docket-management authority.

Hagar's waiver argument similarly falters. The FBI filed a "response and objections to" Hagar's motion, arguing that the motion was premature. It separately filed an answer, which, although cursory, indicated that the agency would raise affirmative defenses based on FOIA's exemptions and remedies. Together, the FBI's filings demonstrate an intention to address Hagar's merits arguments in due course, not to waive or forfeit them.

B.

Hagar raises many issues with the district court's grant of summary judgment in favor of the FBI that coalesce around two core contentions. First, he argues that the district court erred by ruling that the pertinent exemptions applied to the names and email addresses in the "To" line of the email. Second, he alleges the district court erred by ultimately concluding that the header information and metadata were exempted from disclosure,

making multiple arguments about specific errors committed in reaching that conclusion. We address each in turn.

1.   *FOIA Exemptions 6 and 7(C)—The "To" Line Redactions*

The district court determined that the FOIA Exemptions 6 and 7(C) applied to the names and email addresses in the "To" line of the sought-after email. Hagar contends that this conclusion was in error because the email was "already part of the public domain." We need not delve into this argument. While the FBI's summary judgment motion was fully briefed and pending, the government sent Hagar a copy of the email without redactions. Because Hagar has now received a copy of the email disclosing the previously redacted recipient names, his claim for this information is now moot. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008); *see also Calhoun v. F.B.I.*, 546 F. App'x 487, 490 (5th Cir. 2013) (determining that a FOIA action was rendered moot by the FBI's response to the request); *Raz v. Oakes*, No. 02-30054, 2002 WL 31049485, 1 (5th Cir. Sept. 5, 2002) (unpublished) ("The record shows that Raz eventually received the file, albeit through another defendant. Once Raz obtained the record, his FOIA claim for its production became moot.").

2.   *Header Information*

Although FOIA favors disclosure, it "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reps. Comm. for the Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also* 5 U.S.C. § 552(a)(3)(B).

The district court made a number of determinations about the header information that Hagar challenges on review. One is dispositive. The district court "[a]ssum[ed], without deciding," that the FBI would have to create a "new record"—in excess of FOIA's requirements—to share this information with Hagar. The district court credited RIDS Chief Bender's

assertion that producing the header information would require the agency to "copy and paste the header information into a separate text file or Microsoft Word document, for viewing and processing purposes."[2] Hagar asserts on appeal that releasing the header information would not require the FBI to create a new document. Our case law, however, leads us to the opposite conclusion.

Although our court has not addressed the specific question of whether the copying of data not otherwise contained separately in agency records into a new document counts as the creation of a new record under FOIA, we have dealt with FOIA's no-creation-exception on a previous occasion. In *Rutila v. United States Department of Transportation*, we examined a FOIA plaintiff's request for certain individuals' application software profiles and Windows Explorer directories and folder structures from the Federal Aviation Administration (FAA). *See* 72 F.4th 692, 694 (5th Cir. 2023). There, the FAA explained in a declaration that its only avenue to comply with the request would be to take screenshots—digital images of what was displayed on a computer when Rutila's requests were queried. *See id.* at 696-97. Our court credited this declaration. *See id.* We recognized that, because the FAA did not maintain the requested information in a separate record form, to comply with Rutila's request, the FAA "would have to open the relevant software, display the requested data, and take a screenshot of the displayed information." *Id.* at 697. Citing a Tenth Circuit case reaching the same conclusion, we determined that the taking and production of a screenshot constituted the creation of a new record. *Id.* at 697–98 (citing *Brown v. Perez*,

---

[2] As noted, we review factual determinations in FOIA cases for clear error. *See Batton*, 598 F.3d at 175 n.6. Hagar presents no issue of fact disputing RIDS Chief Bender's assessment. *Cf. Batton*, 598 F.3d at 179 ("[A]gency affidavits are generally accorded a 'presumption of legitimacy' unless there is evidence that the agency handled the FOIA request in bad faith." (citation omitted)).

835 F.3d 1223, 1237 (10th Cir. 2016)). The dividing line between what FOIA did and did not require boiled down to whether the request "merely require[d] [the agency] to produce information they retain and use, albeit in a slightly altered format" or "required [the agency] to produce a new record . . . of information it does not store." *Id.* at 698.

The district court did not examine *Rutila*, and the parties did not address the case below and do not before us. But the case guides us here. On the record before us, we cannot find a meaningful difference between the taking of a screenshot in *Rutila* and the production of the header information. Although the FBI has access to the header and IP information, it "does not maintain a record" of them. *Id.* at 697. To access the information Hagar seeks, an FBI employee would have to select "the 'File' tab in Microsoft Outlook," click a button seeking the email's "Properties," and locate "a box titled, 'Internet Headers.'" Because this information "is dynamic in electronic form, and not plainly visible on the body of the email when viewed or printed," RIDS Chief Bender averred that the only way to pass this information along to Hagar would be to "copy and paste the header information into a separate text file or Microsoft Word document." Much like taking a screenshot, doing so would require only a few steps. Yet even those steps would require the agency to create something new, which it would not have otherwise had before. As we said in *Rutila*, FOIA "does not obligate agencies to satisfy such requests." *Id.* at 698.

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of the FBI. [3]

---

[3] Because we do so based on the FBI's no-creation-exception argument, we do not address district court's alleged errors regarding FOIA Exemptions 6 and 7(C) nor *in camera* inspection, which centers around the applicability of Exemption 7(C).

## C.

Hagar challenges the district court's denial of his motion for reconsideration, his motion for relief from judgment, and his motion to take judicial notice. As noted above, we review each for abuse of discretion. *See Alexander*, 867 F.3d at 597; *Hall*, 884 F.3d at 549; *Taylor*, 162 F.3d at 829.

Hagar's post-trial motions raise the same arguments we have already addressed or otherwise disposed of on appeal: (1) the magistrate judge lacked authority to "terminate[]" Hagar's motion for summary judgment; (2) the "To" line information is already public, so the district court erred in determining it was subject to FOIA Exemptions 6 and 7(C); (3) the district court erred in concluding that producing the header information required the creation of a "new" record; (4) the FBI was required to raise any FOIA exemptions affirmatively and the district court erred in applying FOIA Exemptions 6 and 7(C) to the header information; and (5) the district court failed to conduct an *in camera* inspection and should have conducted *in camera* review before granting summary judgment.

Because we conclude that the magistrate judge acted within her authority in dismissing Hagar's summary judgment motion as premature, the "To" line issue is moot, and that producing the header information would have required the creation of a new record in contravention of FOIA, we AFFIRM the district court's denial of Hagar's motion for reconsideration, motion for relief from judgment, and motion to take judicial notice.

## D.

Finally, we examine the general misconduct allegations alleged throughout Hagar's briefing. Hagar's misconduct allegations amount to a disagreement with adverse rulings by the district court. For example, he describes the magistrate judge's recommendation to grant summary judgment in favor of the FBI as the "second" instance of "judicial

misconduct" at issue in the case. Hagar, however, points to no record evidence or extrajudicial sources of prejudice or misconduct.[4]

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Hagar identifies no extrajudicial source of bias, no procedural irregularity beyond routine case management, and no conduct that would cause a reasonable observer to question the court's impartiality. Hagar's claims on this issue are meritless.

## IV.

For the reasons explained above, the judgment of the district court is AFFIRMED.

---

[4] The First Circuit case on which Hagar relies to set out a judicial misconduct standard—*United States v. Marquez-Perez*, 835 F.3d 153 (1st Cir. 2016)—concerned whether a district court's conduct during trial constituted a due process violation, *see id.* at 158, and is inapposite here.