KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE
This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff Joshua Verde is a lawyer representing a commercial airline pilot, Kevin Johnson, who developed a conflict with Defendant Federal Aviation Administration (FAA) concerning his medical fitness to fly. Arguing that the FAA withheld documents when answering his FOIA request, Verde sued the FAA in August 2016. (Doc. No. 1.) In April 2017, Verde moved for summary judgment, requesting an order compelling full disclosure as well as attorney's fees. (Doc. No. 12.) The FAA then filed its own motion for summary judgment, asserting that it had fully complied and thereby mooted the case. (Doc. No. 17.) Based on careful consideration of the parties' arguments and applicable law, the Court DENIES Verde's Motion for Summary Judgment, GRANTS the FAA's Motion for Summary Judgment, and DENIES Verde's request for attorney's fees.
I. BACKGROUND
Verde filed his FOIA request on May 5, 2016. (Doc. No. 13-1.) The FAA farmed out portions of his request to various offices, all but one of which responded promptly and completely. (Doc. No. 28 at 1-2.) The one exception was the Southern Region office of the Aerospace Medicine Division (ASO-300). (Doc. No. 17 at 1-2.) Dr. Susan Northrup, a Regional Flight Surgeon for the FAA, handled the request on behalf of ASO-300. On June 16, 2016, the office produced ten responsive pages and told Verde that 27 pages were withheld. (Doc. No. 13-2 at 1-2.) Verde then filed an administrative appeal on July 13. (Doc. No. 13-5.) On August 12, the FAA acknowledged his appeal:
[This] email acknowledges receipt of you[r] July 13, 2016 FOIA appeal.... I apologize for the delay in sending this email, but as Ms. McLean communicated to you several times, we are shorthanded and working through a backlog. As you are aware, we must work appeals in the order they were received and there are a number being worked that were received before this one. Rest assured that your client's appeal will be worked in the order it was received as expeditiously as possible.
(Id. ) Verde then filed this lawsuit on August 31. (Doc. No. 1.)
Verde and the FAA carried on negotiations during the litigation. Each side had problems with the other. In the FAA's view, Verde's document request was overly broad, entailing the review and production of thousands of emails. (Doc. No. 28 at 5.) Moreover, privacy issues prevented the production of certain documents. (Id. ) In Verde's view, it was improper for Dr. Northrup to conduct the document search on behalf of her office, because he was seeking documents that directly implicated her. (Id. ) He also faulted the FAA for not sending his request to a different doctor, Michael Berry, whose records Verde also sought. (Id. )
These negotiations nevertheless did move the document production forward.
*665 On February 3, 2017, the FAA produced another 42 pages of documents, as well as a Vaughn index.[1] (Doc. No. 13-6.) Verde was still unsatisfied, however, for several reasons: his concern about Dr. Northrup's involvement; the failure to obtain records from Dr. Berry; and his possession of FAA emails responsive to his original request that FAA should have but had not yet produced. (Doc. No. 27 at 3.)
Consequently, Verde filed a motion for summary judgment on April 4, 2017. (Doc. No. 12 & 13.) On April 11, the FAA internal appeals system remanded Verde's appeal to ASO-300 and provided instructions for a further search. (Doc. No. 16-3 at 14.) On April 27, the Southern Region office made another substantial document production: 154 pages of documents, all but ten of which were new, and a second Vaughn index. (Id. at 16-19.) The FAA then filed its own motion for summary judgment, arguing that production was complete and the case should be dismissed. (Doc. No. 17.)
This sequence of events looks distinctly different from each party's vantage point. In Verde's view, the FAA did not want to produce these documents. Had he not pursued his FOIA request vigorously, only ten pages of responsive documents would have been produced, and the remainder would remain secret. In particular, he sees his motion for summary judgment as the catalytic event. Coming eight months after his lawsuit and nearly a year after his original request, it pried loose a trove of documents that the FAA would not have otherwise released. (Doc. No. 27 at 3-4.)
Verde attributes the FAA's reticence to the nature of the documents he sought. (Id. at 6.) He believed the records would show "inappropriate communications between private business entities and an FAA regional flight surgeon." (Id. ) Verde also believed that an FAA employee-evidently Dr. Northrup-"was 'doing the bidding' of a private corporation," which resulted in the unauthorized disclosure of documents. (Id. ) As he sees it, his FOIA request "was necessary to determine the extent of the breach of privacy and whether the FAA employee(s) were engaged in a practice of publicly disclosing protected medical information." (Id. ) Throughout this litigation, however, these allegations have remained unsubstantiated. Verde has not presented any evidence of wrongful behavior, and it does not appear that the records he obtained through his FOIA request evince it either.
In the FAA's view, its internal processes worked as designed. "FAA never changed its position or altered its conduct because of Plaintiff's lawsuit." (Doc. No. 28 at 9.) Verde's summary judgment motion was not the key event; the FAA's remand of Verde's appeal and subsequent search were the key events. (Id. ) The FAA also argues that Verde is himself to blame for delays. One cause was the privacy problem, which required Verde's client to sign a release so that documents with personal health information could be released to Verde. (Id. at 5.) Verde could have avoided this by obtaining a release at the outset.
Another crucial cause of delay was the poor wording of Verde's original document request. (Doc. No. 28 at 5.) Item # 1 of Verde's request asked for:
All emails sent to or from the email account of Dr. Susan Northrup (susan.northrup-md@faa.gov) that meet any of the following criteria:
*666 - Date range: October 1, 2015 to Present;
- Sent to or from the wnco.com domain;
- Reference "Kevin Johnson" in the subject or body of the message;
- Reference [an identifying number] in the subject or body of the message; and/or
- Contain the word "concerns" in the subject of the message.
(Doc. No. 13-1 at 1.) Perhaps inadvertently, the scope of this request was exceptionally broad. Verde asked for all emails meeting "any" criteria, one of which was simply a lengthy date range. This led the FAA to tell Verde during their negotiations in February that approximately 13,000 documents were responsive to his request. (Doc. No. 13 at 3.) As the FAA sees it, Verde is responsible for the resulting confusion and delay. For months, Verde maintained that the FAA was withholding thousands of pages of responsive documents, but in fact, he had simply drafted a document request much more inclusive than necessary. (Doc. No. 28 at 5, 9.)
II. APPLICABLE LAW
Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the nonmoving party. Rogers v. Bromac Title Servs., L.L.C. , 755 F.3d 347, 350 (5th Cir. 2014).
FOIA obligates federal agencies, upon receiving reasonably detailed requests for records, to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The obligation imposed on agencies by FOIA reflects "the fundamental principle of public access to Government documents" and "a general philosophy of full agency disclosure." John Doe Agency v. John Doe Corp. , 493 U.S. 146, 151-52, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Recognizing, however, that "legitimate governmental and private interests could be harmed by the release of certain types of information," ids="11330437" index="12" url="https://cite.case.law/us/493/146/#p151">id. at 152, 110 S.Ct. 471, FOIA contains exemptions allowing agencies to withhold or redact documents. See 5 U.S.C. § 552(b). Given the importance of FOIA's purpose, these exemptions should be "narrowly construed," though not to the point that they lose "meaningful reach and application." John Doe Agency , 493 U.S. at 152, 110 S.Ct. 471.
Of FOIA's various exemptions, two are relevant to this case. First, Exemption 5 permits agencies to withhold or redact "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, the effect of Exemption 5 is to "require disclosure only of those materials that are routinely discoverable in private litigation." Hoover v. U.S. Dept. of Interior , 611 F.2d 1132, 1138 (5th Cir. 1980). "The courts have recognized that Exemption 5 protects, as a general rule, materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process' privilege."
*667 Coastal States Gas. Corp. v. Dept. of Energy , 617 F.2d 854, 862 (D.C. Cir. 1980). Second, Exemption 6 permits agencies to withhold or redact "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).
Owing to FOIA's idiosyncrasies, "[s]ummary judgment resolves most FOIA cases." Cooper Cameron Corp. v. U.S. Dept. of Labor, Occup. Saf. & Health Admin. , 280 F.3d 539, 543 (5th Cir. 2002). Summary judgment under FOIA necessarily turns on the character and content of documents that the requester cannot see. Batton v. Evers , 598 F.3d 169, 175 (5th Cir. 2010) (" Batton I "). Consequently, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). "What the agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. U.S. Dept. of Justice , 705 F.2d 1344, 1351 (D.C. Cir. 1983) (" Weisberg I "). "The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." Id. If an agency is withholding or redacting documents, it "has the burden to prove de novo that the information is exempt from disclosure." Batton I , 598 F.3d at 175.
To establish the reasonableness of its search, an agency "may rely upon affidavits to show it has conducted a reasonable search, as long as they are relatively detailed and nonconclusory and submitted in good faith." Weisberg I , 705 F.2d at 1351. As for exemptions, "[c]ourts generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions." Cooper Cameron Corp. , 280 F.3d at 543. The agency should not be granted summary judgment on the basis of "a conclusory or generalized assertion, even if the FOIA requester has not controverted that assertion." Id. The agency can, however, meet its burden by submitting an adequate Vaughn index or "an equivalently detailed affidavit." Id. at 544.
III. SUMMARY JUDGMENT
The Court must decide whether the FAA has met its burden, first, of showing that it has made a search reasonably calculated to uncover all relevant documents and, second, of proving that withheld information is exempt from disclosure.
The declaration of Shiela Gibson, Medical Program Analyst at the FAA, is the agency's main evidence showing that it made a sufficient search. (Doc. No. 16 at 10.) Gibson worked at ASO-300 and processed Verde's FOIA request after FAA management remanded it to ASO-300 in April 2017. (Doc. No. 16-1 at 1-4.) This is the search that yielded the 154-page production later that month. Gibson explained her search methodology as follows. For Item # 1, Dr. Northrup's emails, she says:
The initial search of Dr. Northrup's emails, as requested by sub-item # 1(a) of the FOIA request that required production of all emails from "October 1, 2015 to present," would have required the production and review of thousands of emails, which would be unduly burdensome. Therefore the email search was limited to the parameters specified in sub-items b, c and d of item # 1 which provided sufficient precision to narrow the request and allow this Office to locate the responsive documents.[2]
*668 (Id. at 4.) Verde construes Gibson's declaration as an admission by the FAA that "it narrowed the scope of its search to deal with the burden of conducting the search." (Doc. No. 18 at 5.) In his view, because the FAA had acknowledged thousands of emails were responsive to the FOIA request, FAA's production of only 154 pages is unreasonable. (Id. ) "Such self-limiting by an agency should not free the agency of its obligations under FOIA and certainly should not entitle it to relief via summary judgment." (Id. )
The adequacy of FAA's search is measured by a standard of reasonableness, with the Court looking at the relevant circumstances and for reasonable specificity in the agency's declarations. Two aspects of the case's circumstances are worth noting. The first is the unwitting overbreadth of Verde's original FOIA request. He asked for all of Dr. Northrup's emails over a lengthy period. It seems that his request swept in thousands of responsive documents due to this unintentionally wide-ranging construction. The second relevant circumstance is that, in Verde's original request, he indicated an unwillingness to pay high costs of production: "I am willing to pay a reasonable fee for FOIA processing, but request that you notify me immediately if the anticipated fees exceed $500." (Doc. No. 13-1 at 1.) Taken together, these circumstances justify the narrowing that Gibson and ASO-300 did upon remand of the case in April 2017.
The FAA has supplied the reasonably detailed declaration that the law requires, and it bears no indicia of bad faith or inadequacy. Moreover, Verde has not identified any real deficiencies in the search process that Gibson conducted in April 2017. Therefore, the FAA has met its burden of establishing that its search was reasonably calculated to produce all relevant documents.
As for the FAA's withholding, the Vaughn index accompanying FAA's production in April 2017 constitutes the agency's case that its redactions are valid. (Doc. No. 16-2.) The index lists emails one by one, providing dates, senders, recipients, descriptions of redacted information, and FOIA exemptions justifying redaction. A typical entry in the index indicates that, located at page 35 of the production, a one-page email from "Northrup, Susan MD (FAA)" to "Marshall, Taneesha (FAA)" was sent on April 14, 2016 at 9:30 AM. It bore the subject, "Re: Kevin Johnson-3/30/16 Ltr from Atty Goldstein," and contained redacted info described as "Follow up with FAA Atty on subject letter; Legal advise regarding letter." Exemption 5, including the deliberative-process privilege, attorney work-product privilege, and attorney-client privilege, justified the redaction. The index contains such entries for eighteen redactions. FAA cites Exemption 5's various privileges for six of the eighteen and Exemption 6, "Privacy Information-Non-work phone number," for the other twelve.
To rule in the FAA's favor, the Court must determine that the agency's Vaughn index "sufficiently identif[ies] the documents at issue, including the relevant information contained in each document, and explain[s] why the asserted exemptions justify withholding." Batton I , 598 F.3d at 176. In Batton , the Fifth Circuit ruled against the Internal Revenue Service after it withheld documents containing third-party taxpayer information. IRS offered only a "general description" of the withheld documents, saying nothing "about the individual documents and why more general information-for example, the dates, authors, or brief description of the subject matter of the notes and information-cannot be disclosed." Id. at 178. Here, FAA seems mostly to have redacted documents, not completely withheld them, and its index *669 has all the features that the Fifth Circuit faulted the government for not providing in Batton . The FAA here clears the threshold the IRS did not reach there.
Verde's sole argument on the issue of redactions is the same one described above-his entitlement to the supposed thousands of documents that FAA identified but did not produce. As noted above, Verde argues that the FAA "self-limited" its search and has failed to explain its refusal to produce these documents. (Doc. No. 18 at 7.) Again, these documents appear responsive to Verde's initial FOIA request only in the sense that his request reached them inadvertently, not in the sense that they actually relate to his client. Beyond these assertions, Verde provides no reasons to believe that the exemptions in the April production's Vaughn index are inapplicable or overbroad. Likewise, Verde makes no objection to the redactions in FAA's February 2017 production.
Because the FAA has produced a sufficiently specific Vaughn index that Verde has not persuasively criticized, the FAA has adequately demonstrated that the information withheld here is indeed exempt from disclosure. Based on that showing, and on the FAA's showing that it conducted a reasonable search, the FAA is entitled to summary judgment.
IV. ATTORNEY's FEES
Though the FAA is entitled to summary judgment, it still may be that Verde should receive attorney's fees. Under FOIA, the district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant can be eligible for attorney's fees even if the district court rules in favor of the government. Eligibility turns on whether the complainant "substantially prevailed," which may happen either through "a judicial order, or an enforceable written agreement or consent decree" in the complainant's favor, or through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The latter is known as the "catalyst theory." Batton v. I.R.S. , 718 F.3d 522, 525 (5th Cir. 2013) (" Batton II "). Application of the catalyst theory is "largely a question of causation." Weisberg v. U.S. Dept. of Justice , 745 F.2d 1476, 1496 (D.C. Cir. 1984) (" Weisberg II "). "Although an agency cannot prevent an award of attorneys' fees simply by releasing the requested information without requiring the complainant to obtain a court order, the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Id.
The statute says that the district court "may" assess attorney's fees, rather than directing that it "shall" assess fees. Accordingly, the district court must determine not only whether a complainant is eligible for fees, but also whether he is entitled to them. Entitlement turns on the balancing of four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." Batton II , 718 F.3d at 527. The Fifth Circuit has instructed that "all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards." Blue v. Bureau of Prisons , 570 F.2d 529, 534 (5th Cir. 1978).
a. Eligibility
Verde argues that he substantially prevailed in this litigation because his lawsuit catalyzed the vast bulk of the FAA's *670 production. (Doc. No. 27 at 6.) The FAA responds that Verde has failed to establish causation because "the FAA never changed its position or altered its conduct because of [his] lawsuit. The FAA followed its own internal procedures once it received the FOIA request, and it began producing documents almost immediately." (Doc. No. 28 at 9.)
A resort to case law shows that the FAA has the better argument. Verde resembles prior complainants who were held not to have substantially prevailed, despite obtaining documents midway through litigation. See, e.g. , Weisberg II , 745 F.2d at 1496-97 ; Gahagan v. U.S. Citizenship & Immig. Servs. , 2015 WL 6738537 (E.D. La. Nov. 4, 2015). In Weisberg , an author sought records on the assassination of Dr. Martin Luther King, Jr. 745 F.2d at 1478. Two years into the litigation, the government began to produce documents, ultimately turning over tens of thousands of pages. Id. at 1482. The D.C. Circuit nevertheless found that the district court had erred by deciding that the author had substantially prevailed. Id. at 1496. The record showed a "strong possibility that the Department disclosed the vast bulk of the materials ... as a result of its administrative processing of the FOIA request." Id. at 1496-97 (emphasis in original). The government had also warned the author early on that it was facing an "overwhelming backlog of FOIA requests." Id. at 1497. In addition, the author's requests were "voluminous." Id. The court also faulted the author for attempting to short-cut the administrative line by going to court after he learned of the backlog. Id. On these facts, "it [was] not at all clear from the record that the lawsuit actually caused the Department to release the documents," so the D.C. Circuit vacated the district court's ruling in the author's favor. Id.
Similarly, in Gahagan , an immigration attorney sought government records pertaining to a client who was facing immigration enforcement. 2015 WL 6738537 at *1. The agency failed to respond promptly, so the attorney went to court. Id. The agency notified him that another agency would also be handling part of his request and that just over 5,000 requests preceded his in the pipeline. Id. at *3. Several hundred pages of documents were then produced a month after the attorney filed his suit. Id. at *1. Though the production was subsequent to the lawsuit, the court held that the attorney had not substantially prevailed. Id. "[W]hen plaintiffs in FOIA cases are aware that administrative problems are causing the government to delay in disclosing requested information, but pursue a FOIA lawsuit in spite of this knowledge, they are generally held not to have prevailed when the administrative problems are overcome, the information is produced, and the plaintiff is unable to show that the lawsuit caused the production." Id. at *3.
Like the government agencies in Weisberg and Gahagan , the FAA was facing an administrative backlog, and it notified Verde early on that his appeal would take time to process. It also experienced delays due to the unintentionally voluminous scope of Verde's original request. The FAA's internal appeals process eventually resolved the issue, and the workings of that process explain the FAA's April 2017 production at least as well as does the filing of Verde's summary judgment motion.
Verde's conduct also resembles the complainants' conduct in Weisberg and Gahagan . Verde's lawsuit came just a few weeks after the FAA notified him that administrative backlogs would slow the resolution of his appeal. Like the attorney in Gahagan , Verde was told that administrative problems would delay review of his request, but he went to court anyway.
*671 While the FAA did not produce documents quite as fast as the agencies in Gahagan , its production was not overly delayed, and it remained in contact with Verde in the meantime.
A comparison to plaintiffs relying successfully on the catalyst theory is also instructive. See, e.g. , Batton II , 718 F.3d at 526. In Batton , a taxpayer who had been audited filed a FOIA request that went unanswered for almost a year, so he sued. Id. at 524. The taxpayer obtained just over a thousand pages of documents during the litigation, and several thousand more pages were eventually produced in response to a court order. Id. at 524-25. The Fifth Circuit held that the taxpayer had substantially prevailed based on the catalyst theory. Id. at 526. The key distinction between Batton and the cases above was the agency's "continued and unexplained delays." Id. Rather than conveying reasonable timing expectations or asserting plausible exemptions, the agency did not explain its actions and produced documents only after years of litigation. Id.
The blameworthy agency conduct in Batton is not present here. The FAA dealt appropriately with most of Verde's request; only one part of his request is even in dispute here. As to that part, the FAA explained to Verde the issues that would prevent timely and complete production, in contrast to the silence of the agency in Batton . The FAA then worked with him to resolve privacy issues implicated by his request and to narrow his request to an appropriate scope. The contrast is clear.
While the question is close, the evidence in the record and the comparisons to prior cases lead the Court to conclude that Verde did not substantially prevail for the purposes of FOIA's fee-shifting provision.
b. Entitlement
Even if Verde were considered a substantially prevailing party, the four-factor balancing test for determining entitlement to fees is not in his favor. As noted, those factors are: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law. Taken together, the four factors indicate that a fee award is not appropriate.
The Fifth Circuit has said that the first factor supports an award "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Blue , 570 F.2d at 533-34. "[It] does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern." Id. Verde's case is the latter type. He has shown no benefit for the public in the documents he obtained. The benefits are solely for his client, with respect to the client's career as a commercial pilot. Verde maintains that his FOIA request served the public by interrogating potential government wrongdoing (Doc. No. 27 at 6), but none was uncovered here. When the documents actually obtained "fail to evidence any fraud or wrongdoing," the public has not actually benefitted. State of Texas v. I.C.C. , 935 F.2d 728, 733 (5th Cir. 1991).
As to the second and third factors, the Fifth Circuit has said that they reflect "a preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure." Blue , 570 F.2d at 534. This distinction is important because, in a suit "to advance private commercial interests," "there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the *672 FOIA." Fenster v. Brown , 617 F.2d 740, 743 (D.C. Cir. 1979) (quoting the Senate Report for FOIA). Both Verde and his client had adequate motive for the FOIA request independent of a fee award. Verde is representing a client in his professional capacity as an attorney. His client, in turn, seems to have been engaged in a dispute affecting his livelihood as a pilot. Each has the sort of "private self-interest motive" that courts see as sufficient incentive for FOIA requests absent the award of fees.
The Fifth Circuit has said of the fourth factor that "attorneys' fees would be favored if an agency's nondisclosure was designed to avoid embarrassment or thwart the requester." Blue , 570 F.2d at 534. But if "the government had a reasonable basis in law for concluding that the information in issue was exempt and [it was not] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior," a fee award for the prevailing party is less appropriate. Fenster , 617 F.2d at 744 (quoting Cuneo v. Rumsfeld , 553 F.2d 1360, 1365-66 (D.C. Cir. 1977) ). The foregoing discussion shows that the FAA had a reasonable basis in law for at least some of its exemptions and withholdings. Privacy issues slowed its production of documents, as did the inadvertent overbreadth of Verde's request. Verde has a legitimate point that at least some of the documents produced in April 2017 could have been produced earlier, but that consideration tilts the scales in his favor only modestly. Setting that against the other three factors, the balance favors the FAA.
Verde, perhaps sensing his fate under the four factors, invites the Court to pursue a different analysis. (Doc. No. 27 at 8-9). He cites a concurring opinion in a recent D.C. Circuit case that characterized the factors as "atextual," "arbitrary[,] and ill-considered," and called for dispensing them. See Morley v. C.I.A. , 719 F.3d 689, 691-92 (D.C. Cir. 2013) (Kavanaugh, J., concurring). The Court cannot accept Verde's invitation because binding Fifth Circuit authority requires the four-factor test. See Batton II , 718 F.3d at 527. Even if the Court could, there are principled reasons to disagree with Judge Kavanaugh, who proposes either adopting the expansive interpretation of the Civil Rights Act's fee-shifting provision from Newman v. Piggie Park Enterprises, Inc. , 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), or looking only to the fourth factor of the current test, the reasonableness of the agency's basis for withholding documents. Morley , 719 F.3d at 692-93.
Something must structure the discretion that the statute leaves to district courts, and the four-factor test is a reasonable approach. It has its origin in circuit decisions four decades old. See Blue , 570 F.2d at 532-34 ; Cuneo , 553 F.2d at 1365-66. Those decisions drew sensible conclusions from the law's legislative history, which courts may consider with an appropriate skepticism but need not totally disregard.
The four-factor test also tracks the preference for scholarly, journalistic, and other noncommercial FOIA requests over commercial requests reflected in the statute's fee structure. See 5 U.S.C. § 552(a)(4)(A)(ii) ; Laurence Tai, Fast Fixes for FOIA , 52 HARVARD J. ON LEGIS . 455, 470 (2015) (noting that "the statute places the least priority on record requests 'for commercial use' by charging them the highest fees"). Judge Kavanaugh thus erred in his characterization of FOIA as "an equal-opportunity disclosure statute" that "treats all requests and requesters the same," which was central to his call for alternative approaches. Morley , 719 F.3d at 691.
Judge Kavanaugh's proposals also appear imprudent in light of the fact that commercial actors comprise a large majority of FOIA requesters. See Margaret B.
*673 Kwoka, FOIA, Inc. , 65 DUKE L. J. 1361, 1379-1414 (2016) ; Tai, Fast Fixes , at 470. Commercial requesters would therefore be the main beneficiaries of eliminating the first three or all of the four factors, as Judge Kavanaugh proposes. This would run contrary to the preference expressed elsewhere in the statute, as noted, while adding to the already onerous burdens that FOIA places on agencies. See id. at 473-76 (summarizing FOIA's high administrative and financial costs).
The predominance of commercial actors among FOIA plaintiffs also distinguishes FOIA from the Civil Rights Act, which was at issue in Newman , Judge Kavanaugh's favored analogue. See 390 U.S. at 402, 88 S.Ct. 964. As the Supreme Court said in that racial discrimination case, the Civil Rights Act faced "difficult" enforcement prospects, and private suits would serve "to advance the public interest," thereby "vindicating a policy that Congress considered of the highest priority." Id. at 401-02, 88 S.Ct. 964. It is hard to say the same for FOIA. The law is used out of private commercial interest, like the private lawyer who uses FOIA to gain an advantage in negotiations over high-dollar government contracts (see Cuneo , 553 F.2d at 1365-66 ), at least as often as it is used in the public interest, like the advocate who uses FOIA to uncover government misconduct on an issue of major public concern (see Hernandez v. U.S. Customs & Border Protection Agency , 2012 WL 398328, at *9 (E.D. La. Feb. 7, 2012) ). When set against the statute's legislative history, expressed preferences, purposes, and uses, the compensation of commercial FOIA requesters is not a cause so pressing as to require discarding four decades of precedent.
Adhering to that precedent, the Court concludes that Verde is not entitled to attorney's fees.
V. CONCLUSION
Plaintiff Joshua Verde filed this action under the Freedom of Information Act and eventually obtained a substantial production of responsive documents. He appears to have represented his client ably and energetically. But because Verde has not shown any shortcoming in that production or any deficiency in the search process that yielded it, Defendant Federal Aviation Administration is entitled to summary judgment. Accordingly, the FAA's Motion for Summary Judgment (Doc. No. 17) is GRANTED , and Verde's Motion for Summary Judgment (Doc. No. 12) is DENIED . On the issue of attorney's fees, Verde has established neither that he is eligible nor that he is entitled to them. Accordingly, the request for attorney's fees in his Motion for Summary Judgment, elaborated in his Memorandum in Support of Attorney's Fees and Costs (Doc. No. 27), is DENIED .
IT IS SO ORDERED .

A Vaughn index is "a common FOIA procedural device that lists the documents responsive to the request and explains why portions have been withheld." Cooper Cameron Corp. v. U.S. Dept. of Labor, Occup. Saf. & Health Admin. , 280 F.3d 539, 544, 544 n.12 (5th Cir. 2002) (citing Vaughn v. Rosen , 484 F.2d 820 (D.C. Cir. 1973) ).

By "items b, c, and d," Gibson meant the other criteria from Verde's original request: "Sent to or from the wnco.com domain"; Reference 'Kevin Johnson' in the subject or body of the message; Reference [an identifying number] in the subject or body of the message." (Doc. No. 13-1 at 1.)